37   627
102   461

JULIA ANN AINSWORTH, plaintiff in error, vs. WILLIAM AINSWORTH, defendant in error.

When a wife had sued her husband for divorce and filed against him a bill to reform a marriage settlement, under which the property acquired by the marriage was taken from the husband and put into the hands of a Receiver, and pending these actions the husband prayed the Court to allow him something out of said property for his support, and the wife objected, suggesting reasons why such order should not be passed, and asked that the same be tried by a special jury, and the Judge refused to submit the matter to a jury, and without hearing any testimony, made an order on the Receiver for a monthly allowance for the husband, he erred. He might well have submitted the issues to a jury; at any rate he should have heard testimony as to the facts before passing the order.

Equity.   Decided by Judge UNDERWOOD.   Heard Superior Court.   November Term, 1867.

The bill makes the following case: George W. Garrett made a will, making his wife his executrix, ordering his debts paid, and leaving her to dispose of the whole balance of his estate at pleasure during her widowhood, directing that his children be maintained and educated, and that upon marrying or becoming of age, they should take equal shares of said estate, and that should she marry, she should have one-third of his property during life, remainder to the children, and the children should have the other two-thirds. He died leaving his widow and eight children. She qualified and took possession of said estate, consisting of realty worth say $3,000 00, and personalty worth say $4,800 00. With the funds of the estate she bought three negroes.

She agreed to marry William Ainsworth. It was understood and agreed between them that all the property which she had, or might become entitled to, should be settled upon her, as her sole and separate property, to and for her only use and benefit, and free from the control, debts and liabilities of said Ainsworth, or any future husband she might have. She trusted to Ainsworth to write out this agreement. He wrote out an agreement, stating that what property she

had was not to be bound for any of his debts in anywise whatever, that his property only should be bound therefor, and ending thus: but if it should turn out that he was not in debt, so as not to interfere with her property and had means to pay his own debts and did pay them, then their marriage shall be as common marriages, " but in no case shall her property that she has at the time of her marriage (with him) be bound for his debts; she makes this reserve for the purpose of keeping her property safe from his debts should there be any."

He read the agreement to her and in presence of the witnesses, reading it according to said original understanding, and she and he signed it in the presence of the witnesses, on the 19th of July, 1854, and were on the same day married. In the matter of this agreement, by fraud or mistake of William Ainsworth, she was deceived; and entered into a contract different from what she understood it to be.

In 1855, she had a child by said William Ainsworth. Ainsworth was a vagabond gambler, horseracer and spendthrift; he treated her with personal violence, and accused her of infidelity in the presence of her children. She quit him, and in March, 1858, sued him for a divorce. He often threatened to sell her life interest in said lands, or mortgage or pledge it and raise money, and take away the negroes, sell them and never return; he sold some of the corn, fodder, etc., and a house, and used the proceeds; he cleared land that should not have been cleared, tore away the fencing of the farm, and committed other acts of waste, etc. She prayed for a writ of *ne exeat* against him, that he be enjoined from selling any of said realty or personalty or mortgaging the same, that all of the property be put into the hands of a Receiver, to be used for the support of herself, and that said marriage articles be reformed, so as to conform to the original understanding and agreement, and that out of this property she should have permanent alimony.

The Chancellor, D. F. Hammond, sanctioned the bill, injunction was ordered, and said property put into the hands of a Receiver, as prayed for.

In December, 1858, the Chancellor ordered the Receiver to sell certain personalty, and with the proceeds support Mrs. Ainsworth and Ainsworth's said son, for 1859. In March, 1859, he further ordered the Receiver to allow her to use the plantation and such of the personalty as was needed to carry on the farm for their support, and sell the other personalty, or to rent out the lands and hire out the negroes, and sell the other personalty for the purpose of supporting them. The *ne exeat* was dismissed in March, 1859, and at that term the Chancellor ordered two hundred pounds of bacon and fifty dollars paid to Ainsworth for his support. In May, 1859, he answered the bill.

By his answer, he said that the negroes bought by her were bought with her own money, that no mistake was made in said antenuptial contract, but it was just what he and she agreed it should be; that he had sufficient means to 'pay his debts admitted to be just, but was sued for claims which he denied owing, and it was expressly understood that this contract was made to secure her against the possible recovery in said suits, and for no other purpose; that he was not a gambler nor horseracer nor spendthrift, had never offered her personal violence, nor charged her with infidelity. He explained the charges of waste, and contended that he had improved rather than injured the property. He admitted that he had offered to mortgage the property to get security or bail, (she having had him put in jail on said *ne exeat*,) but denied any intention of selling the property, or wasting or injuring the estate. He admitted the other charges in the bill, and held that the property vested in him by virtue of said marriage, except that it was not subject to the said debts created prior to the marriage.

So matters stood at March Term, 1867. Then a rule *nisi* was granted, calling on the Receiver to show cause why he should not pay over to Ainsworth a part of the proceeds of the sale of said personalty for the monthly "support and maintenance" of Ainsworth.

It appeared that at that time the Receiver had on hand $396 42, out of which he claimed $300 00 for commissions

and services as Receiver. Mrs. Ainsworth objected to such allowance to Ainsworth, upon the grounds: 1st. That it would violate said injunction; 2d. Because Ainsworth had violated the injunction by selling some of the property; 3d. and 4th. Because Ainsworth had no equitable or legal claim on the property in the hands of the Receiver; 5th. Because the Court could not, by mere motion, dispose of this matter; 6th and 7th. Because Ainsworth could support himself, and had individual means sufficient for his support; and last, because all of the property in Mrs. Ainsworth's hands, and the money held by the Receiver, was barely sufficient to maintain her and her children. And her solicitors tendered in evidence the whole record, and prayed that issue might be joined, and tried upon the matters set up in said objections. In this she was joined by the Receiver. Counsel for Ainsworth agreed that the whole record should be so used as evidence, and joined issue upon said answer. Complainant's solicitors then proposed to submit the issue to a jury. The Court said he would decide the matter. They then proposed to introduce evidence before him upon said issue. He said he would not try the whole case, " but would try to see that justice was done." He then ordered that the Receiver pay to Ainsworth, at once, $15 00 per month, beginning at the end of the last term of the Court, and until further order of the Court.

Plaintiffs in error, say that the Judge erred in refusing to submit said issue to the jury, in refusing to hear any evidence on the points made in her objections, and in allowing Ainsworth any part of said fund.

BINGHAM, STRICKLAND, for plaintiff in error.

W. F. WRIGHT, for defendant in error.

HARRIS, J.

George W. Garrett, the first husband of complainant died, leaving a will whereby she was appointed Executrix. His real estate was estimated to be worth $3,500 00, and his per-

sonal estate consisting of slaves, stock of cattle, etc., $4,-800 00. He died leaving a widow and eight minor children, and placed by the will the whole property, to be disposed of by her at her pleasure, during her widowhood, charged however with the education and maintenance of his children by her, and, upon their attaining their majority or marrying, they were to draw out their shares. The will further provided, that if the said Julia Ann *married*, she was restricted to a *life estate* in this property of *one-third*, remainder to his children by her. Subsequent to the death of testator, in the year 1854, she intermarried with defendant, Wm. Ainsworth, having previously to said intermarriage entered into articles of agreement, in reference to the property she would be entitled to under the will of Garrett, which articles are now the subject of controversy under the bill pending at her instance, but into the merits of which, it is unnecessary for us to enter for the determination of the matters before us. Living unhappily with defendant after their marriage, and having a child by him, she instituted suit for a total divorce in 1858, on the grounds of cruelty, etc. This suit is still pending. The bill above mentioned to reform the marriage articles, alledging fraud in Ainsworth in drawing them and procuring her assent to them, and praying an injunction to restrain said defendant from disposing of, or mortgaging the property brought into the marriage relation, and also, for an order placing the property in the hands of a Receiver, with direction that he should apply the income to the maintenance of her children and herself, was filed after her suit for divorce.

It does not appear from the record that, upon her marriage with Ainsworth, the property in her hands as executrix, was divided, or since. Her share, fixed by her last marriage and limited to a third for her life, remains mixed up as far as we can percieve, with the property of her children by Garrett. Nor are we enabled to determine whether the whole estate of Garrett, remaining undisposed of by her, went into the hands of the Receiver appointed, or not, or only her life estate in one-third.

·From causes to which it is unnecessary to advert, neither the divorce suit, nor the bill, has been tried; both are still pending. Interlócutory orders appear to have been made, but as to their regularity or propriety, we have nothing to say, as no error has been assigned in reference to them. In 1868, the defendant moved the Court to make an order, directing the Receiver, in whose hands the property had been placed, to pay over to him a *monthly allowance* thereform for *his support and maintenance.* This application was vigorously resisted by Mrs. Ainsworth, on various grounds, presented in writing, amongst which, was an allegation that· Ainsworth *could support himself,* and that he had individual property of his own sufficient for that purpose; and further, that all the estate in the hands of the Receiver, was barely sufficient to support herself and children, and prayed that a jury might be empannelled to enquire into the facts.

It does not appear that the Judge examined any witnesses as to the condition of the property, its income, or made any inquiries as to the amount necessary to be applied in that quarter, of the state of the actual wants of Mrs. Ainsworth and children; but it does appear that he refused to permit the issue made by Mrs. Ainsworth, by her written objections to the written application of Ainsworth, to be tried by a jury, as was urged upon him by her counsel; and, it also appears that he *did not hear testimony himself,* in open court, touching the propriety of making any allowance to Ainsworth, but passed an order without due enquiries, directing the Receiver to pay out of the income in his hands, for the support of Ainsworth, $15 00 *monthly,* until the further order of the Court.

The record discloses the fact, that the Receiver had in his hands $396 42, out of which, he claimed that he was entitled to $300 00 for commissions and services connected with the managment of the property in his hands. If this officer of the Court was justly entitled to the sum charged by him, (into which claim the Court ought to have required a thorough investigation,) the small sum of $96 42 only was subject, at the time, to appropriation—to whom?

Ainsworth *vs.* Ainsworth.

In the face of this claim of the Receiver, which does not seem to have been contested by any body, the balance left in his hands within the fraction of a few dollars, is by a dash of the Judicial pen, "*sic volo—sic jubeo,*" directed to be paid to the support of Ainsworth, (presuming the order to stand for six months or, from term to term,) leaving the sum of $6 42 for Mrs. Ainsworth, and her house full of children!!!

Let the application be looked at in another view:

The whole property of Garrett was estimated before the war, at $8,300 00; no deduction being made for emancipation of the slaves, loss of stock, provisions or corn, or other casualties, the result of the war. Her share, under the will, was a life estate of one-third, say $2,760 00. Having no *data* by which the income of this share can be accurately ascertained, I will assume it, (and it is a liberal estimate,) to equal the annual interest of the latter sum, say $193 64. If this entire sum was applied to her use, and that of her child by Ainsworth, can any one think that enough for food, clothing and education? Yet out of this one-third product as interest, (and there is no other property brought by her into the marriage relation than the life estate in it,) we have the extraordinary fact of an allowance to Ainsworth, of $15 00 per month, or $180 00 *per annum, leaving* $13 64 *out of the whole annual interest, for the maintenance of Mrs. Ainsworth and child.*

A calculation made in almost any way, having direct reference to either income or interest, arising from the share she was entitled to under her first husband's will, demonstrates beyond all dispute, that the exercise of Judicial power, in making the allowance to Ainsworth, was not characterized by sound discretion.

The wife should have been, from all the considerations involved, the first object of judicial care. She was a suitor for divorce, and *prima facie* by her bill, sworn to, she was an injured person. The injunction had, at her instance against the husband, still was held over him; the order to the Receiver to pay her alimony *pendente lite,* and to provide for conducting the litigation, was still of force.

That the injunction was within the control of the Court, to modify or remove, is undeniable ; but it seems an anomolous proceeding, without precedent, as far as we are advised, by an order on the income in the hands of the Receiver, in behalf of the husband, to rescind, virtually, and almost entirely, the alimony allowed her, for which end, chiefly, the property had been placed in the custody of a Receiver—a meagre provision, at most—in lieu of the clear, legal right she had to an adequate support out of the labor and property of defendant.

It occurs to us, that the Judge should have borne in mind, when making his order, that the estate of Garrett, in the hands of the widow, when married to defendant, had not then, nor has it since, been divided ; that her life-estate, in one-third of that property, not having been legally ascertained, could not have been reduced to possession by the husband, in virtue of his marital rights. Standing thus, it would seem that a court of equity, instead of hearing a troublesome litigation, about the reformation of the marriage articles, looking to the unquestionable equity of the wife, as it appears upon the record before us, to a competent provision being made for her, out of her own property, the husband being insolvent, would order a division, and compel a settlement, of this small life-estate, upon Mrs. Ainsworth.

The order, in favor of the husband, out of such a small income, when possession of her life-estate, in the third of the property, by virtue of his marital rights, had not been obtained, seems to be a reversal of all legal principle. Where is to be found any principle that authorizes the support of the husband out of the property of the wife, however large it may be ? By law, her property is exempt from the duty of her own maintenance, and there is no power, in any Court, to subject it to the maintenance of the husband ; for the obligation is for the husband to maintain the wife, not the wife the husband. It is a legal duty, from which, whilst living together, he cannot discharge himself, although, she may have separate property ; nor if they are living apart, if the

fault be not hers, and no court can rightfully change this universal rule.

Assuming the property she brought into the marriage relation to have been absolutely his, still as his control of it.had been restrained by the injunction, and its income appropriated to the support of the wife, we cannot discover any reason.for the interference indirectly with the direction which had been given, unless the Judge may have entertained the idea, that the income was sufficient for the double purpose of supporting both ; but.the testimony shows *that he made no inquiry into the facts, actually refused an inquiry into them,* and had, therefore, nothing to warrant the indulgence of such an opinion.

It is very probable that the order was granted under the influence of too keen a sensibility, to a miserable spectacle of suffering humanity before him as a suppliant.

It certainly would have been very excusable in one thus prompted by large benevolence, to bestow from his own purse his charity ; but a charity out of the little pittance previously and properly bestowed on an other, and which brings to her increased suffering and distress, is an indulgence of power, which we think the law neither allows, nor should allow.

It was alleged, and sought to be proved, that Ainsworth had some individual property from the sale, of which he could have derived support. Why, instead of granting this order, was not the injunction removed as to that individual property, and thus permitted his immediate necessities to be supplied ?

In what has been said, it is not our design either to express or intimate an opinion, that in an application like that of Ainsworth's, the Judge, because objections had been filed presenting important issuable facts, should have caused an issue to be made up thereon and tried. It would have been a discreet and unobjectionable mode, to have permitted a jury to find the special facts with which he should be acquainted, before making his judgment ; but as the application of Ainsworth was resisted, that resistance imposed the duty upon the Judge, of causing an inquiry by him into the facts ; this should have

been by examination of witnesses in open Court, so as to collect from the testimony, the elements for a safe and proper judgment.

As the Judge neither permitted the jury to find the facts, nor ascertained them himself by sworn witnesses, the order in the case was made in ignorance of facts which were essential to have been considered, and should be rescinded.

Judgment reversed.