## THE GEORGIA RAILROAD *vs.* SPEARS.

1. A railroad which transports live stock as freight is a common carrier as to such freight, and is liable as in other cases except for damages resulting from the act of God, the public enemy, or of the animals themselves, unless the carrier has further protected itself by contract.

2. A common carrier of such freight may limit this liability in respect thereto by special contract.

(*a*) The liability of the carrier cannot be limited by a mere notice in the bill of lading; but if a special contract be incorporated in the bill of lading, and signed by both parties, it is sufficient.

3. A contract by a shipper of live stock that, in consideration of a free pass for himself over the road, he would assume all risk of loss or damage to the stock, except such as might be caused by collision or running off the track, was neither unreasonable nor contrary to public policy.

Railroads. Damages. Negligence. Contracts. Common Carriers. Before Judge SNEAD. Richmond Superior Court. October Term, 1880.

To the report contained in the decision it is only necessary to add that the following were among the grounds of the motion for new trial:

(1.) Because the court refused to charge the following request of defendant's counsel: "That the defendant is not a common carrier of animals unless it holds itself out as such; and not being a common carrier as to animals, it is bound only to exercise ordinary diligence in their transportation."

(2.) Because the court refused to give the following request of defendant's counsel without qualification: "If the defendant furnished a suitable car, and if the animals were properly loaded on the car, and no accident happened to the train or to this particular car, and this mare was injured by no defect in the car or fault in the loading, or mismanagement of any part of the train, the defendant is not liable."

To this the court added after the word "train," the following: "Or other like acts of negligence of the officers of the railroad, or want of diligence on their part."

JOS. B. CUMMING, for plaintiff in error.

J. S. & W. T. DAVIDSON, for defendant.

CRAWFORD, Justice.

James J. Spears brought suit against the Georgia Railroad and Banking Company, to recover the value of a certain mare alleged to have been lost from improper care and management in the loading, shifting, and caring for her in transit from Atlanta to Augusta on its said railroad.

The defendant pleaded the general issue, and special pleas that it was not a common carrier of live freight, and was bound as to such freight only to ordinary diligence ; that defendant was not guilty of any degree of negligence; that the obligation of defendant was this and no more, viz : To furnish proper cars and conduct them skillfully, and that defendant had done this and brought its train, including the car on which this animal was shipped, without accident, and on schedule time, to Augusta; that the mare died of disease, or was injured by reason of her own natural propensities or those of the animals with which she was transported.

The testimony, as disclosed by the record, shows that the plaintiff, through his agents, Wooten & Co., shipped nineteen mules and three horses, on a through bill of lading, issued by the Nashville, Chattanooga and St. Louis Railroad Company, from Nashville to Augusta, October 19th, 1877. This bill of lading contained the following provision among others, to-wit :

"Whereas, the Nashville, Chattanooga and St. Louis Railway and connecting lines transport live stock only at first-class rates, except when, in consideration of a reduced rate in car load, the owner and shipper assume certain risks, specified below ; now, in consideration of said railroads agreeing to transport the above described live stock at the reduced rates of $120 per car load, and a free passage to the owner or his agent on the train with the stock, the said owner and shipper do hereby assume and release the said railroads from all injury, loss and damage, or depreciation which the animals or either of them may suffer in consequence of their being weak, or escaping, or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or being injured by fire, or the burning of any material while in the possession of the companies, and from all other damages incidental to railroad transportation, which

shall not have been caused by the fraud or gross negligence of said railroad companies.

And it is further agreed that the said owner or shipper is to load and unload and transfer said stock, with the assistance of the companies' agent or agents, at his or their own risk."

This bill of lading was headed, in large letters, much more conspicuous than any other printing or writing on •it : " Live Stock Contract." Across its face was printed, in conspicuous red letters: " it is agreed and understood that the terms of this contract apply to any and all roads which are a party to this rate."

The animals came to Atlanta, and were there unloaded and fed by O. H. Jones, livery stable keeper. They were reloaded on the car of the defendant. O. H. Jones, himself, or by his agent, procured a free pass for plaintiff from Atlanta to Augusta, and on receiving said pass, signed a special contract. The contract read as follows :

OFFICE OF GEORGIA RAILROAD COMPANY, ⎰
ATLANTA, GA., October 22, 1877. ⎱

" Received of Edw. A. Werner, agent of Georgia Railroad. and Banking Company, at Atlanta, certificate of free passage on the train of Georgia Railroad from Atlanta to Augusta. The consideration for which is that I am to assume all risk of loss or damage to the stock between Atlanta and Augusta, loaded in car No. 112, except such as may be caused by collision of train or running off the track.

J. J. SPEARS,
per O. H. Jones."

Plaintiff received the free pass mentioned in the contract from O. H. Jones, and traveled on it from Atlanta to Augusta.

The train on which the stock was shipped reached Augusta on time. The mare on the way was discovered to be lying down and groaning. Efforts were made to get her up, but they failed, and she reached Augusta in a dying condition, and died in the company's possession. The jury on the trial rendered a verdict against the company for the value of the mare; a new trial was moved and refused, and the defendant excepted. The questions

of law made by this record arise on the liability of the company under the facts as hereinbefore set out.

1. Transportation of live stock by common carriers over land was unknown to the common law; hence in fixing their liability it was done with reference to the nature and kinds of property generally transported. To apply the same rigid rules to animate property, possessing the power and oftentimes the will to cause injuries and losses in consequence of its own vitality, would be extending the rule beyond reason and justice. To establish, therefore, a just and proper legal liability in such cases, has been the subject of much labor and consideration by the learned judges who have been called upon to deal with it.

At common law the only exceptions to the liability of the common carrier for losses were, where they occurred by the act of God or the public enemy. But to these have since been added cases where the goods were lost by their own decay, from an inherent infirmity, or by the fault of the owner himself. And still later, and "from the necessity and justice of the case another exception has been introduced in favor of the carrier of live stock, of accountability for its loss or injury resulting from its own uncontrollable vicious propensities, and the damages incident to its carriage from its inherent natural character." So that it now seems to be settled, that a carrier of living animals as freight is a common carrier as to such freight, and liable as such with the foregoing exception. That is to say, he is liable as in other cases, except from the act of God, the public enemy, or of the animals themselves, unless he has further protected himself by contract. 14 N. Y., 570; Hutchinson on Carriers, section 222; 6 Otto, 258; 111 Mass., 142; 52 N. H., 255; 21 Mich., 166; 4 Am. Railway Rep., 418; 3 Wood's Rep., 380.

2. The right of limiting the carrier's liability by contract was at first denied to him, and was so ruled by the supreme court of New York. 19 Wendell, 234 and 251. But when the question came before the supreme court of the United States, in the case of the New Jersey Steam

Navigation Company *vs.* The Merchants Bank, that court unanimously held that a common carrier might restrict his liability by special contract, and this is now the settled law of most of the states.  6 How., 344.

It is also settled that whilst this may be done, it is never allowed by a mere notice, but must be upon a special or express contract.  This rule has been incorporated into our statute law.  Code, §2068.

In the case before us the liability turns not upon the ordinary liability of the common carrier, but upon special contract, and in such cases the latter must control.  The testimony shows that the plaintiff, by his agents, shipped with other stock the mare in question, upon a through bill of lading, in which it was agreed, in consideration of reduced rates and a free passage to the owner or his agent on the train with the stock, to assume, and release the railroads from, all injury, loss and damage, or depreciation which the animals might suffer in consequence of their being weak, escaping or injuring themselves or each other, or from overloading, heat, suffocation or viciousness, and from all other damages incidental to railroad transportation, and not caused by the fraud or the gross negligence of the companies.  This bill of lading was signed by both parties, and yet the question is, was it a binding contract?  It would not be doubted but from the fact of its being incorporated in the bill of lading.

Under our statute, notices given by entries on receipts will not limit the carrier's liability ; it requires an express contract.  Although, therefore, receipts and bills of lading might be covered all over with notices limiting the liability of the carrier, they *per se* would amount to nothing.  But if the parties make a special contract to that effect, it will not be set aside because it may have been inserted in the receipt—the question in such cases being, was there an express contract, and not where it was put.  37 *Ga.*, 633,4,5 ; 42 *Ib.*, 490.

3. The contract set out in this testimony when established binds both parties, and each one must be govern-

ed by its terms. But even if this contract were out of the way, or was without binding force, that which was made at Atlanta is without the objection offered to this, and puts out of all dispute the question of its validity because of being in a receipt. It provides that in consideration of a free passage on the train of the Georgia railroad from Atlanta to Augusta, the plaintiff assumes all risk of loss or damage to the stock between those points, except such as may be caused by collisions or running off the track. The liability of the railroad is fixed by this contract; the rights of the shipper are fixed by it; and if it is neither impossible, immoral, unreasonable nor illegal, it must be enforced.

But it is insisted by counsel for the defendant in error, that it is unreasonable and against the public policy. We think that so far from its being unreasonable, it is on the contrary a proper and reasonable bargain, which was but just to the railroad, in view of the nature, character and disposition of the freight itself. A free passage on the stock car or train was given the party from Nashville to Augusta, that he might supervise and control the management of his stock in the car, and protect it by his own directions, from injury or damage, by reason of its very capacity to produce such results.

When, therefore, the shipper at Atlanta made a new contract, by which he was to take the passenger train, and abandon the stock train, it was but fair and right that the company should insist if he did so, that he should "assume all risk of loss or damage to the stock between Atlanta and Augusta, except such as may be caused by collision of trains or running off the track." Neither is it contrary to public policy, because the public is more vitally interested in the proper and regular running of the trains, and the safety with which they are run, than it is in the special safety of this particular freight which, from its very nature, is exceedingly liable to injury and loss, and without any damage to the public even if lost.

v 66—31

We think, therefore, that in looking at this case in all its legal aspects, as presented by the record, that the judge erred in taking it out of the contracts made by the parties, as well as by his refusal to charge without qualification, as requested by defendant's counsel, that " If the defendant furnished a suitable car, and if the animals were properly loaded, and no accident happened to the train, or to this particular car, and this mare was injured by no defect in the car, or fault in the loading, or mismanagement of any part of the train, the defendant is not liable." To this request the judge added : " Or other like acts of negligence of the officers of the railroad, or want of diligence on their part," which qualification took the case out of the contract, and placed upon the company the carrier's liability when there is no contract, and to our minds was error.

Our judgment under the law and the facts of this case is that the verdict should be set aside and a new trial granted.

Judgment reversed.