SOUTHERN EXPRESS COMPANY, plaintiff in error, *vs.* JOHN L. SHEA, defendant in error.

When a common carrier receives and receipts for goods, to be transported beyond the terminus of his own line, he undertakes to transport the goods to the point of destination, either by himself or competent agents, and if the goods are lost beyond the terminus of his own line, he will be liable therefor.

When an express contract was made between the plaintiff and the Adams Express Company for the transportation of goods from New York to Macon, Georgia, and the goods were lost when in the possession of the Southern Express Company, as the agents of the former Company, to complete the transportation under the original contract of bailment:

*Held,* that the plaintiff's right of action, for the loss of the goods, was against the Adams Express Company, with which he made the con- tract for the safe transportation of the goods to the point of destina- tion, and not against the Southern Express Company.

Case against a carrier.   Charge of the Court.   By Judge Cole.   Macon Superior Court.   May .Term, 1868.

Shea brought case against the Southern Express Company, averring in one count, that on the 3d of November, 1865, he delivered to said Company, as a common carrier, at Savannah, for transportation to Macon, four packages of goods, worth $7,000 00, which, by the fraud, negligence and carelessness of said Company, were wholly lost; and in another count, averring the same things with this variation : that the Southern Express Company is known as the Adams Express Company, in New York, and that the said goods were delivered to it in New York.   The general issue was plead.

On the trial, the plaintiff read in evidence a printed receipt, as follows :

" ADAMS EXPRESS COMPANY,

Great Eastern, Western, Southern Forwarders, No. 1.

NEW YORK, October 27, 1865.

Received of McGrath & Hunt two (2) cases merchandise, value ———, marked J. L. Shea, Macon, Ga., which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation.

It is part of the consideration of this contract, and it is agreed, that

the said Express Company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be, by said Express Company entrusted, or arising from the dangers of railroads, ocean or river navigation, steam, fire in stores, depots, or in transit, leakage, breakage, or from any cause whatever, unless, in every case, the same may be proved to have occurred from the fraud or gross negligence of said Express Company, or in their servants; nor in any event shall the holder hereof demand beyond the sum of fifty dollars, at which the article forwarded is hereby valued, unless otherwise herein expressed, or *unless especially insured by them, and so specified in this receipt,* which insurance shall constitute the limit of the liability of the Adams Express Company. *And if the same is entrusted or delivered to any other Express Company or agent, (which said Adams Express Company are hereby authorized to do,) such Company or person so selected shall be regarded exclusively as the agent of the shipper or owner, and as such alone liable, and the Adams Express Company shall not be, in any event, responsible for the negligence or non-performance of any such Company or person;* nor in any event shall said Express Company be liable for any loss or damage, unless the claim therefor shall be presented to them in writing, at this office, within thirty days after this date, in a statement to which this receipt shall be annexed. All articles of glass, or contained in glass, or *any of a fragile nature,* will be taken *at shipper's risk only,* and the shipper agrees that the Company shall not be held responsible for damage to goods not properly packed and secured for transportation. It is further agreed, that said Company shall not, in any event, be liable for any loss, damage or detention caused by the acts of God, civil or military authority, or by rebellion, piracy, insurrection or riot, or the dangers incident to a time of war.

For the Company.                                        BROWN.

Freight ————————."

It was admitted by defendant that the Adams Express Company, at New York, had issued and delivered to the plaintiff, or his agents, receipts exactly like that for all the goods sued for.

Plaintiff then read in evidence the answers of E. P. Tunison, who testified as follows: In the latter part of October, 1865, he was agent of the Southern Express Company, and also of the Adams Express Company, at Savannah, Georgia. His agency of the Adams Express Company was independent of his agency of the Southern Express Company. In the latter part of 1865, he received, from a New York steamer, four boxes, one bale, and one bundle, marked " J. L. Shea,

Macon, Ga." He shipped these goods on board the steamer Savannah, plying between Savannah and Augusta, which sunk in the Savannah river on the 5th of November, 1865. (It was admitted that all of Shea's goods were on the Savannah when she sunk.) Of Shea's goods, one box and one bundle of wadding was recovered. The box was delivered to Shea at Savannah, the bundle was thrown away as worthless.

He, witness, received said packages (from the New York steamer) from the Adams Express Company, as its agent in Savannah, and shipped them as agent of the Southern Express Company, on said steamer Savannah, to Augusta. In receiving the goods, as agent of the Southern Express Company, from the Adams Express Company, he gave no receipt, because the contract between the two companies did not require such receipt. He acted in the matter as agent of both companies, with full knowledge of the contract between the companies, and received the goods under said contract. Had he given any receipt, it would have been the same as usually given to the public at that time. (For which see *ante*.)

Plaintiff also read in evidence a circular letter, sent by said witness to Shea, as follows:

"SOUTHERN EXPRESS COMPANY, EXPRESS FORWARDERS, }
SAVANNAH, February, 13, 1866. }

SIR: For the purpose of ascertaining if any of your goods were saved from steamer Savannah, sunk on the Savannah river, on her voyage to Augusta, November 5, 1865, and not being identified, were sold by agents of said steamer at auction, we request that you forward us your invoices of said shipment, 4 Nov., '65, as per our manifest we find J. L. Shea, 4 boxes, to your address.

Yours, respectfully,
E. P. TUNISON,
Agent Southern Express Company.

J. L. SHEA, Esq., Macon."

They also read said contract alluded to by said witness, as follows:

"THIS AGREEMENT, made this the third day of October, 1865, by and between the Adams Express Company, a joint stock association, organized pursuant to the statutes of the State of New York, of the first part,

and the Southern Express Company, a corporation duly organized under the laws of the State of Georgia, of the second part, witnesseth: Whereas, the parties hereto have agreed upon a division of their territorial rights, as Express Companies, within and throughout the United States; and whereas, the more completely to carry out the intent and spirit of the said agreement, and to provide for the profitable conduct of the express business thereunder, it is necessary to define the mutual obligations of the parties thereto, it is therefore agreed: First. That the Adams Express Company will deliver to the said, the Southern Express Company, for the completion of the transportation, all goods, wares and merchandize, and other property, which the said Adams Express Company may receive of any of its offices for inland transportation to any point south of the Ohio river and west of Richmond, Virginia, saving and excepting to points on the Louisville and Nashville Railroad and its branches, and the railroad running to Lexington, Kentucky, with their connections as they now exist, on the Baltimore and Ohio Railroad and its branches, on the Alexandria and Orange Railroad, and on the Virginia Central Railroad, and also to make like delivery, for a like purpose, of all property received by the said Adams Express Company, and destined to points west of the Mississippi river, and south of a line drawn due west from Cairo, Illinois. Second. The said Southern Express Company hereby agrees to deliver to the said, the Adams Express Company, for the completion of the transportation, all goods, wares and merchandise, and other property, received by the said, the Southern Express Company at any of its offices, and destined to points within the territory of the said, the Adams Express Company, as the same is now occupied by them, and is more precisely defined in the said agreement. Third. That all goods, wares and merchandize, and other property delivered by the said, the Adams Express Company, to the said, the Southern Express Company, shall be received by the latter Company upon the same terms and conditions as are expressed in the printed receipts used and issued by it, upon the receipt of similar shipments from the public generally, and upon no other terms and conditions, and that no other or greater liability shall attach to the said Southern Express Company, upon the delivery to it of any such property, than such as arises under such printed receipts, and this stipulation shall take effect upon each delivery of property thereunder in like manner as if one of such printed receipts had been issued to the said, the Adams Express Company, on such delivery. Fourth. That all goods, wares and merchandise, and other property delivered by the said, the Southern Express Company, to the said, the Adams Express Company, shall be received by the latter company upon the same terms and conditions as are expressed in the printed receipts used and issued by it upon the receipt of a similar shipment from the public generally, and upon no other terms and conditions, and that no greater liability shall attach to the said Adams Express Company, upon the delivery to it of any such property, than such as arises under such printed receipts, and

Southern Express Company *vs.* Shea.

this stipulation shall take effect upon each delivery of property here-under, in like manner as if one of such printed receipts had been issued to the said Southern Express Company on such delivery. Fifth. The phrase "printed receipts," as herein used, shall include the forms now in use by the said two companies, and any subsequent modification thereof which either company may adopt. The terms and time of set-tlement between the two companies shall remain as heretofore agreed upon. In witness whereof the said companies have caused this agree-meet to be signed by their respective Presidents the day and year above written.

ADAMS EXPRESS COMPANY, [L. S.]
By W. B. DINSMORE, President.

SOUTHERN EXPRESS COMPANY, [L. S.]
By H. B. PLANT, President.

Sealed and delivered in presence of—

D. B. BARNUM,
GEO. W. TILLEY."

Plaintiff also read in evidence an agreed statement of facts, as follows:

"The amount in value of goods, as shown by the invoices attached, ($6,250 86,) was delivered to the Adams Express Company, in New York City, on the 26th of October, 1865, consigned to J. L. Shea, Macon, Ga., as his property, and the Adams Express Company thereby undertook to deliver said goods to said John L. Shea, Macon, Georgia, within a reasonable time; said goods were never delivered. If they had been delivered they would have been worth in Macon, Georgia, ———— *per centum* advance on said invoice prices.

Further, it is admitted and agreed that said goods were forwarded by the Adams Express Company, by sea, to Savan-nah, Georgia, and thence forwarded *via* Savannah river, on steamer Savannah, and that said steamer was lost about thirty miles above Savannah, on the 5th of November, 1865, and said goods were then and there lost. Whether the goods were shipped from Savannah on said steamer, by the Adams or by the Southern Express Company, is to be determined by the evidence in the case.

The steamer was lost under the following circumstances: She was tied up about thirty-five miles above Savannah,

when she was run into by another steamer coming down the river, and sunk."

It was understood that it was not admitted that the Adams Express Company undertook to deliver the goods in Macon; that much of the foregoing admission went for naught.

Shea testified that the goods were worth fifty *per centum* upon the invoice prices, and that the box which he got from the wreck he took at $150 00. Two other witnesses put the value in Macon at fifty and seventy-five *per cent.* on the invoice prices, respectively, and all agreed that the Express freights at the time was about $7 00 per hundred.

The defendant's attorneys offered no testimony. They requested the Court to charge the jury as follows:

1st. If they believe, from the evidence, that the Adams Express Company and the Southern Express Company had, before the shipment of the goods by the Adams Express Company, entered into a contract, which at the time of the shipment was subsisting, that they should not be liable for the loss of goods delivered by one of these companies to the other for transportation, at the *terminus* of their respective lines, by *fire* or *water*, and that the Adams Express Company delivered the goods in this case to the Southern Express Company, at Savannah, as the agents of the plaintiff, then the plaintiff is not entitled to recover.

2d. If, from the evidence, they believe said goods were delivered by plaintiff to the Adams Express Company in New York, and consigned to the plaintiff at Macon, Georgia, and were received by the Southern Express Company, at Savannah, from the Adams Express Company, to be by the Southern Express Company forwarded to Macon, Georgia, then said Adams Express Company acted as the agent of plaintiff in delivering the goods to the Southern Express Company, and are alone liable to the plaintiff for the loss of the goods, and as a consequence the Southern Express Company is not liable to the plaintiff for such loss.

The Court refused so to charge, and on the contrary charged that the Southern Express Company was liable to the plaintiff in this case, as a common carrier, and that the Southern

Express Company was liable to the plaintiff, no matter how they received said goods at Savannah, even if they had, as common carriers, picked them up in the streets.

The jury found for the plaintiff $9,200 64, with interest and costs.

Defendant's attorney moved for a new trial upon the grounds that the verdict was strongly and decidedly against the weight of the evidence, and because the Court erred both in refusing to charge as requested, and in charging as he did. The new trial was refused, and this is assigned as error on the grounds aforesaid.

NISBETS, DOUGHERTY, for plaintiff in error, said a common carrier may, by special contract, limit its liability. Irwin's Code, section 2042; 6th Howard's R., 367, and authorities cited. 19th Ga. R., 203 ; 21st Ga. R., 526; 28th Ga. R., 543. There was such a special acceptance here. Perils of river include collision of vessels not caused by negligence. Story on B., 512–514; 3 Esp. R., 67; Abbot on Shipping, sections 2 and 5; 4 Taun.. R., 126 ; 2 Wend. R., 190. The presumption of negligence, if any, is against the vessel under sail. Abbot on Shipping, 330, note 1 ; Davies' R., 359; 10 Howard's U. S. R., 586. As to who has the burden of proof as to negligence. Berry et al., vs. Cooper and Boykin, 28th Ga., ante. Chitty on Con., t. p., 212 and note; 3 Monf. R., 239; Peck, 270; 2 Baily S. C. R., 177 and 421; 4 Strobart, 168 and 180 ; 4 Binney, 127 ; 2 Watts, 114, 8 do. 479; 1 Conn. R., 487; 3 Mass. R., 481; Sm. L. Cases, 318; 12 Howard's U. S. R., 273. As to express contract, they cited, 21st Ga. R., 541, 2, 3, and 36th Ga. R., 532; Irwin's: Code, sections 2718, 2719, 2720. If the contract between the companies is not an express one to shield the defendant, then the Adams' is not shielded by its receipt and it is liable to Shea, for it was bound to deliver beyond its terminus, unless relieved by express contract. 8 M. and W. R., 421; 3 E. L. and Eq. R., 497; 5 H. and N. R., 274, 969; note 2. Ang. on Carriers, section 95; 19th Wend. R., 534 ; 3 Law of R. R., 610; 18 Penn. St. R., 224; 24 Ill. R., 332, 466; 34

Ill. R., 389; 27 Vt. R., 110; 1 Fla. R., 403; 9 Barb. R., 317, Am. Law Review, April, 1868, 426 to 442.

LOCHRANE, COBB & JACKSON, BACON & SIMMONS, for defendant in error, replied, no excuse avails but *actus dei* or public enemy. Irwin's Code, section 2040. Liability may not be limited by entry on receipts. Irwin's Code, section 2042; 36*th Ga. R.*, 532, 635. Defendant is common carrier, sections 2039, 2040. 36*th Ga. R.*, 532, 635. The contract between the companies did not bind plaintiff. The Adams Express Company could not bind Shea as his agent. Paly on Agency, 150, 151, 153, 164, 32, *et seq.* Hammond, parties to action, 66; 1 Livermore, 94, 107; Story on Bail, 5 and 6; 3 Ross L. Cases, 212, 235; Irwin's Code, 1679, 2168, 2170. If delivery to the Southern Express Company is shown, that is sufficient for plaintiff. Chitty on Con. 312, marg. 140; Redfield on Railways, 246. Southern Express Company is liable, doubtful whether Adams Express Company is. Irwin's Code, 205, and Redfield on Railways, 281, *et seq.*

WARNER, J.

The error assigned to the judgment of the Court below, in this case is, the refusal of the Court to grant a new trial upon the several grounds specified in the motion therefor. We shall not consider the various grounds embraced in the motion for a new trial separately, but confine our judgment to the main question made by the record, which must control the case.

It appears from the evidence, that there were two companies, the Adams Express Company, incorporated in the State of New York, and the Southern Express Company, incorporated in the State of Georgia. The action to recover the loss of the goods, is brought by the plaintiff against the Southern Express Company as a common carrier, upon their *implied contract*, and not as *tort feasor*. The contract for the transportation of the goods, was made by the plaintiff with the Adams Express Company in New York, as appears by the receipt given for the goods, to be transported to Macon, Georgia, the

point of destination.   The goods were lost while in posses-
sion of the Southern Express Company, *en route* from New
York to Macon, and the question is, which company is liable
to the plaintiff as a common carrier, upon the contract for the
receipt and safe delivery of the goods at the point of destina-
tion.   In the case of *Mosher & Co., vs. The Southern Express
Company*, (*ante* 37) it was held, that when a common carrier
received and receipted for goods, to be carried to a point of
destination, *beyond* his own line, he thereby undertook to
safely transport the goods to *that point*, either by himself or
competent agents, and that, if the goods were lost beyond his
own line of carriage, he was liable therefor.   The contract in
this case was made by the plaintiff with the Adams Express
Company in New York, whereby they undertook, as common
carriers, safely to deliver the goods at Macon, Georgia, either
by themselves or competent agents.  If, therefore, the goods were
lost *en route* to the place of destination, either whilst in their
possession, or that of their authorized agents to complete the
transportation, they are liable to the plaintiff therefor on their
contract of bailment.   This ruling is in accordance with the
fundamental principles of the law.   " Bailment, to deliver,
is a delivery of goods in *trust*, upon a contract expressed, or
implied, that the trust shall be *faithfully executed* on the part
of the bailee.   If money or goods be delivered to a common
carrier, to carry from Oxford to London, he is under a con-
tract *in law* to pay, or carry them, *to the person appointed.*"
2nd Bl. Com. 451-2; 3rd Bl. Com. 163.   As the decisions
of the Courts in this country are conflicting as to the liability
of the carrier beyond the terminus of his own route, this
Court, in *Mosher & Co., vs. the Southern Express Company*,
adopted the English rule upon that question, as being the
better, and sounder rule upon *principle*, as well as *practical*
convenience to the public.

   In the cases of the *Southern Express Company vs. Purcell*,
37*th Ga. R.*, 103 ; and *Southern Express Company vs. New-
by*, 36*th Ga. R.*, 635, this Court held, that under the existing
law of this State, a common carrier is liable for the safe de-
livery of goods entrusted to his care as such, and that in case

of the loss of the goods, no excuse will avail him unless the loss was occasioned by the act of God, or of the public enemies of the State; that he cannot *limit his legal liability* by any notice given, either by publications or by entry on receipts given *for the goods*, or tickets sold, but that he may make an express contract *independent of his receipt* and will then be governed thereby. There was no contract between the plaintiff and the Southern Express Company, either express or implied, to transport his goods from New York to Macon, or from any *other place* to Macon ; indeed, there is no *privity* of contract for the transportation of the plaintiff's goods between himself and the Southern Express Company whatever, but there was an *express* contract made between the plaintiff, by his agent in New York, with the Adams Express Company, to transport his goods safely from that point to Macon, the place of destination. The plaintiff *entrusted* his goods for transportation from New York to Macon, to the Adams Express Company by *his contract of bailment*, and *not* to the Southern Express Company, and although the goods may have been lost whilst in the possession of the Southern Express Company, as the agents of the Adams Express Company, to complete the transportation *to the point* of destination, the plaintiff's right of action to recover damages for the loss of the goods is against the company with which he made the contract, the company to which he *entrusted* the goods for safe carriage and delivery as a common carrier, to the point of destination.

In view of the facts of this case as presented by the record, we think the Court below erred in its charge to the jury, "that the defendant, the Southern Express Company, was liable to the plaintiff in this case, as a common carrier, and that said company was liable to the plaintiff, no matter how they received said goods at Savannah, even if they had, as common carriers, picked them up in the streets."

Let the judgment of the Court below be reversed.

BROWN, C. J.

The Adams Express Company had the right to limit its liability to the extent of its territorial limits, or otherwise by " express contract." This may be done, in my opinion, by an express stipulation, to that effect, in the *body* of the receipt given by the company, and accepted by the shipper. Such express stipulation in the *body* of the receipt is not the " notice given, either by publication, or by entry *on* receipts, or tickets sold," which is insufficient, but is one form of " express contract," which is authorized by the Code.

Taking this view of the rights of a common carrier, I think I should hold that the contract contained in this receipt was complied with by the Adams Express Company, on the delivery of the goods at Savannah, which was, at the time, the extent of their territorial limits as stipulated in the receipt, were it not for the former decision of this Court, ruling, that the liability of a common carrier can not be limited in this way. As I am bound, under the Code, by these " unanimous decisions" till changed by the Legislature or by this Court, in the manner directed by the statute, I concur in the judgment rendered in this case.

McCAY, J.

I concur in the judgment of the Court, but I am not satisfied with the ground on which it is put by the majority of the Court.

It is true, that under the decision of this Court in *Southern Express Company vs. Purcell*, 37*th Ga. R.*, 110, Shea has a right of action against the Adams Express Company on his implied contract with it. But it strikes me that he has also, if he so elects, a right of action against the Southern Express Company. The Adams Express Company was his agent. It may be true that the Adams Express Company had no right, under its contract with Shea, to-wit: under its duties as a common carrier, to turn the goods over for transportation to the Southern Express Company. But the fact is that

it did do so.   It made a contract with the Southern Express Company to transport the goods from Savannah to Macon—and it did this as the agent of Shea, without authority, it is true.   But it is a general rule that a person may adopt, *ex post facto*, acts done in his name by another acting without authority.   He is not bound to do so.   He may sue the actor. But, if he so elect, he may adopt his act and sue on the contract.   13 East., 274; 2 M. and S. 485; 1 Bing. N. C., 198; 2 Strange, 859; 1 Atk., 128; 7 B. and C., 310; 3 B. and Adl., 680; Smith's Mer. Law, 113; Bateman Com. Law, section 455.

It is true, if he do adopt the contract he must take it as he finds it.   He cannot separate it into parts.   He must repudiate it altogether, or ratify it.  · 2 Strange, 859.   And *in this case* the rule will perhaps be of no benefit to Shea, as the contract of the Adams with the Southern was a special one.   But I deem it important that, the principle be preserved.   The Express companies are now huge enterprises, and I am not disposed to send our people out of the State for redress, unless that be clearly the law of the case.   The practice of these companies is to turn goods over to each other, under contracts which they profess to make as the agents of the owner.   Perhaps two-thirds of the goods carried by the Southern Express Company, in this State, have been received and are carried, under such contracts.   In my judgment, the owner, though he may have a right to sue the person with whom he made the contract, has also a right, if he so elect, to adopt and ratify the act of his agent and sue the Southern Express Company, not, it is true, on his (the owner's) contract with the Adams, but on the contract which the Adams (his agent) has made with the Southern Express Company. I think, therefore, Shea had a right to sue the Southern Express Company.   But the charge of the Court and the verdict are wrong, because the Southern Express Company, in this view of it, was acting under a special contract and is only bound by its terms.