THE EAST TENNESSEE, VIRGINIA AND GEORGIA RAILWAY COMPANY *v.* JOHNSON & SHAHAN.

| 85 | 497 |
| 90 | 814 |
| 85 | 497 |
| 95 | 777 |
| 85 | 497 |
| 118 | 916 |

1. Where the plaintiffs purchased fertilizers in Charleston, to be shipped to them at a station on the defendant's railroad, and the fertilizers were delivered in Charleston to a railroad company which gave a bill of lading undertaking to ship them to the station named, but making no mention of the defendant company, which had no privity or contractual relation with the initial railroad company (so far as appeared), and no connection with the shipment until the fertilizers were delivered to it in Atlanta by an intermediate railroad company, it was error to charge that if the defendant was one of the connecting lines over which the goods were to be shipped, it would be liable for unreasonable delay of the shipment, whether such delay occurred on its own line or not.

(a) The suit being for delay in delivering the goods and not for damage to them, section 2084 of the code was not applicable.

2. The measure of damages for unreasonable delay in the delivery of goods is the difference between their market value when they should have arrived and their actual value when they arrived, with interest from the former date, less the freight.

v 85-32

3. The opinion of the defendant's agent that the plaintiffs' claim was just and ought to be paid, was not admissible as testimony for the plaintiffs.

May 7, 1890.

Damages. Railroads. Carriers. Charge of court. Evidence. Before J. I. Wright, Esq., judge *pro hac vice.* City court of Floyd county. December term, 1889.

Reported in the decision.

Bacon & Rutherford and C. A. Thornwell, by brief, for plaintiff in error.

Reece & Denny, *contra.*

Simmons, Justice.

The plaintiffs purchased a car-load of acid phosphate in Charleston, designed and directed by them to be shipped to Skellie's, a point in Gordon county, Georgia, reached by the defendant's railway. The purchase was made in March, 1889, to be paid for in the succeeding fall, and the plaintiffs' notes were given for the amount of the purchase-money, $300, due in the fall of 1889. The goods were delivered for shipment to the South Carolina Railroad Co., and in the bill of lading that company undertook to ship them to Skellie's station. There was no mention of the East Tennessee, Virginia & Georgia Railway Co. in the bill of lading, or of any other railroad company except the South Carolina Railroad Company. The defendant company was not a party to the contract and had no connection with the same until the delivery of the goods to it in Atlanta. The plaintiffs had sold the phosphate to planters, to be delivered on arrival, by certain dates. This car-load of phosphate did not arrive at Skellie's for more than a month after the shipment from Charleston, and when the same did arrive, the season during which the phosphate could be used by the planters to whom it had been sold by the plaintiffs, had passed by. When the phosphate arrived at Skellie's station, it was in a differ-

ent car from that in which it had been shipped from Charleston and which was specified in the bill of lading. The plaintiffs had prepaid the freight on the car. They refused to receive the goods when tendered to them at Skellie's station. The price at which they had contracted to sell the goods to the planters, to be paid for in the fall upon the gathering of the crops, would have given them a profit on the phosphate.

There was no evidence as to the time when these goods were delivered to the defendant company. One of the plaintiffs testified that he thought the agent of the company at Rome had said to him that the company had received the goods in Atlanta on April 4th. The agent, however, expressly denies this, and states that he did not know when they were received by the company, and that he so stated to one of the plaintiffs. Upon this denial no issue was joined, and it was doubtless accepted as true on the trial. The plaintiffs sued the defendant company, and under the charge of the court, recovered against it the original cost of the phosphate, the freight which had been prepaid from Charleston to Skellie's, and also the amount of profit at which the plaintiffs had contracted to sell the phosphate to the planters, to be paid for in the fall on the gathering of the crops. The defendant made a motion for a new trial, which was overruled by the court, and it excepted.

1. We think the court erred, under the facts of the case, in charging the jury that if the defendant was one of the connecting lines over which the goods were to be shipped from Charleston, it would be liable for unreasonable delay of goods shipped over its road, no matter whether the delay occurred on its line or not. There was no privity or contractual relation shown between the initial railroad and the defendant company, but on the other hand, the declaration alleges

and the proof shows an express contract made by Johnson & Shahan with the South Carolina Railroad Co. to ship the goods from Charleston, South Carolina, to Skellie's station in Georgia. Under these facts, the rule laid down by this court in the case of *Shea* v. *Southern Express Co.*, 38 *Ga.* 519, and in the case of *Cohen & Menko* v. *Southern Express Co.*, 45 *Ga.* 148, should apply. In these cases it was held that "When a common carrier receives and receipts for goods, to be transported beyond the terminus of his own line, he undertakes to transport the goods to the point of destination, either by himself or competent agents, and if the goods are lost beyond the terminus of his own line, he will be liable therefor." "When an express contract was made between the plaintiff and the Adams Express Company for the transportation of goods from New York to Macon, Georgia, and the goods were lost when in the possession of the Southern Express Company, as the agents of the former company to complete the transportation under the original contract of bailment: *Held,* that the plaintiff's right of action for the loss of the goods was against the Adams Express Company, with which he made the contract for the safe transportation of the goods to the point of destination, and not against the Southern Express Company." *Express Co.* v. *Shea, supra.* In the case of *Cohen & Menko* v. *Southern Express Co.*, 53 *Ga.* 130, Warner, C. J., in speaking of *Shea's* case, *supra,* says: "This court held that the plaintiff could not establish the defendant's liability as a common carrier, on its contract implied by law, by offering in evidence an express contract made with another company for the transportation and safe delivery of the same goods, any more than if the plaintiff had sued John Doe on his implied contract as a common carrier for the loss of his goods and had proved at the trial that he had

made an express contract with Richard Roe for the transportation and safe delivery of the same goods. . . It was held by this court that by the contract offered in evidence by the plaintiff in that case, the Adams Express Company, as a common carrier, undertook safely to deliver his goods at Macon, either by itself or competent agents. The Adams Express Company had the right to select the Southern Express Company as its agent to complete the transportation of the goods, or any other agent, and if the goods were lost whilst in the possession of such agent, the Adams Express Company would be liable for such loss, under its contract with the plaintiff, as proved by his own evidence on that trial; and such was substantially the holding of this court in the *Shea* case, and such was, in substance, the ruling of the court in this case when it was before us on a former occasion, . . this court . . holding, as in the *Shea* case, the plaintiffs could not recover when they had sued the defendant upon its common law liability as a common carrier, for loss of the plaintiff's goods, when they offered in evidence, to establish that liability, an express contract made with another company for the transportation and delivery of the same goods. The plaintiffs in the former suit declared upon one contract made with the defendant, and to establish it offered in evidence an express contract made with the Adams Express Company, a distinct corporation, for the transportation and safe delivery of the same goods." The plaintiffs in the court below in the present case having sued the defendant upon its implied contract to deliver their goods, and having shown in their proof an express contract made with another company, we think, under this rule, they were not entitled to recover at all. If, however, they had sued the defendant as a common carrier, for its neglect and delay in the delivery of the goods after it had received them in

Atlanta, and had proved that the delay occurred on the defendant's line, they would have been entitled to recover whatever damages they had sustained by reason of the delay. WARNER, C. J., in 53 *Ga. supra*, says further : "This court never has decided that the defendant would not have been liable to the owners of the goods received by it in Savannah as a common carrier, upon proof of possession of the goods as such common carrier, and loss of the same whilst in its possession for transportation, either as the agent of the Adams Express Company or as the agent of any other company, in the absence of any evidence on the part of the plaintiffs of an express contract with another company to transport and safely deliver the same goods for which they sued the defendant. All that this court decided in the two cases cited was, that the plaintiffs could not recover against the defendant on the evidence then offered by them to establish its liability. It is a general principle applicable to common carriers, that when a duty is imposed on them by law, an action may be sustained against them by any person who is specially injured by their failure to perform that duty. The evidence in this case shows that the defendant had the possession of the plaintiff's goods, as a common carrier, to transport the same from Savannah to Atlanta. The law imposed the duty upon the defendant to transport and safely deliver the same to the plaintiffs, which the evidence shows it failed to do, and therefore, under the law and evidence in the case, the plaintiffs were entitled to recover damages from the defendant for the loss of their goods. The plaintiffs did not offer in evidence in this case any express contract made by them with any other company for the transportation and safe delivery of their goods, as in the *Shea* case, or as was done by them on the first trial of this case."

The trial judge seems to have thought that the case was controlled by section 2084, which provides among other things that "the last company which has received the goods as 'in good order' shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle among themselves the question of ultimate liability." We do not think the facts of this case bring it within that rule. That rule makes the last company responsible for damage to the goods; this suit was not brought for damage to the goods themselves, but for damage to the plaintiffs because of delay in delivering the goods.

2. We think the court erred in charging as to the measure of damages, as complained of in the 4th and 5th grounds of the motion. The court charged that the plaintiffs would be entitled to recover the price of the goods, with interest on the price they had paid, and the profits they had sold the goods for, and the freight they had paid. Under the facts of this case, we do not think they could recover profits further than is involved in the difference of the value or the freight they had paid. The true rule is, that "Where the goods are unreasonably delayed, the measure of damages is the difference between the market value of the goods at the time they should have arrived and their actual value when they did arrive, with interest from the former date, less the freight." 2 Am. & Eng. Enc. of L., Carriers, p. 906, and cases cited; *Atlanta & West Point R. Co.* v. *Texas Grate Co.*, 81 *Ga.* 602.

3. We also think the court erred in admitting the evidence of Johnson, that Graves, the defendant's agent at Rome, told him his claim was just and ought to be paid. This was simply a matter of opinion on the part of the agent, and could not bind the defendant.

*Judgment reversed.*