## ATLANTIC COAST LINE RAILROAD COMPANY *v.*
## HENDERSON & POWELL.

1. The first count in the petition was to recover, under the Civil Code, §2298, the value of goods receipted for by the last connecting carrier as "in good order;" and the undisputed evidence disclosing that the goods sued for were never received by the connecting carrier, there could be no recovery on this count.

2. The statute imposing a penalty on a carrier for refusing to trace freight (Civil Code, §§2317, 2318) is applicable only where freight has been shipped to be conveyed by two or more carriers to its destination, where, under the contract of shipment, or by law, the responsibility of each carrier is to cease upon delivery to the next connecting carrier "in good order."

3. Where a carrier accepts goods for transportation beyond its line, and issues its bill of lading acknowledging the receipt of the goods consigned and destined to a point beyond its own route "which said carrier agrees to carry to said destination, if on its own road, or otherwise to deliver to another carrier on the route to said destination" for an integral special price for the whole service of transportation, and stipulates that in consideration of the rate charged under the conditions of the bill of lading it is mutually agreed, as to each carrier of the goods over all or any portion of the route to destination, that every service to be performed shall be subject to all the conditions of the bill of lading; and where it appears that the connecting carrier received the goods under the terms of the bill of lading, the contract of carriage will be considered a through contract.

4. A stipulation in such a bill of lading, that no carrier shall be liable for loss or damage not occurring on its own portion of the route, is not binding on the shipper unless he assents to it.

5. Under the agreed statement of facts the connecting carrier was not subject to be called on to trace the freight, as provided in the Civil Code, §§2317, 2318.

Argued January 10,—Decided July 20, 1908.

Action for damages. Before Judge Cann. Chatham superior court. June 24, 1907.

This was a suit by Henderson & Powell, a partnership, against the Atlantic Coast Line Railroad Company, to recover the value of a bale of cotton, and also the statutory penalty for failure to trace freight. The case was tried upon an agreed statement of facts, the material part of which is as follows: The Brunswick & Birmingham Railroad Company owned and operated a line of railroad between Offerman, Georgia, and Ocilla, Georgia, and the Atlantic Coast Line Railroad Company owned and operated a line of railroad from Savannah, Georgia, to Offerman, where it con-

nected with the Brunswick & Birmingham Railroad Company. On November 23, 1903, the Brunswick & Birmingham Railroad Company at Ocilla issued to Henderson & Powell a standard bill of lading for ninety-two bales of cotton, marked "P A T," consigned to "order notify Butler, Stevens Co.," Savannah, Georgia. The face of the bill of lading was as follows: "Received by Brunswick & Birmingham Railroad Company, at Ocilla, Ga., Station, 11-28, 1903, from Henderson & Powell the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said carrier agrees to carry to said destination, if on its own road, or otherwise to deliver to another carrier on the route to said destination. In consideration of the rate charged, under the conditions of this bill of lading, it is mutually agreed as to each carrier severally, but not jointly, of all or any of said property over all or any portion of said route to destination, and as to each party at the time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, on the face or back hereof, all of which are agreed to by the shipper as owner or agent for the owner, and accepted for himself or his assigns as just and reasonable.

| MARKS AND NUMBERS | ARTICLES | WEIGHT (Subject to Correction) |
|---|---|---|
| Consignee, Order Notify | 92 Bales Cotton | |
| Butler, Stevens Co. | P A T | |
| Place, Savh, Ga ....... County............... State .......... Consignees address as information only, and not for purposes of delivery. | Via Cordele Compress Local Delivery | |

Charges Advanced, $ ..............
and..................... ... .......... (Signed) M. S. Germany, Agent.
  (The Signature of the Agent here acknowledges only the receipt of the property, and charges advanced, if any.)

THE BLANK SPACE BELOW MUST NOT BE FILLED OUT BY THE SHIPPER.
The rate of freight from Ocilla, Ga., to Sav'h, Ga., is in cents :

| PER ONE HUNDRED POUNDS. | | | | | · ... | Per 100 |
|---|---|---|---|---|---|---|
| If Times 1st Class | If 1st Class | If 2d Class | .... | If Class H | | If SPECIAL |
|  |  |  |  |  |  | 39 1-2 |

( Signed ) M. S. Germany, Agent."

Among the conditions appearing upon the printed bill of lading are: "Article 3. No carrier shall be liable for loss or damage not occurring on its portion of the route. . . Article 10. This bill of lading is signed for the different carriers who may engage in its transportation, severally but not jointly, each of whom is to be bound by and have the benefit of the provisions thereof; and in accepting this bill of lading, the shipper, owner, and consignee of the goods, and the holder of the bill of lading, agree to be bound by all its stipulations, exceptions, and conditions, whether printed or written." The initial carrier, after issuing the bill of lading, loaded the cotton into two cars and transported the cars to Cordele, where the cotton was unloaded and compressed. The cotton was reloaded in the same cars under the seals of the Brunswick & Birmingham Railroad Company and transported by this railroad to Offerman, and there delivered to the Atlantic Coast Line Railroad Company on December 3, 1903, and the Atlantic Coast Line Railroad Company on that day accepted the cars as the connecting carrier of the Brunswick & Birmingham Railroad Company under the bill of lading, and the cars were brought into the Savannah yards under the original seals of the Brunswick & Birmingham Railroad Company, where the seals were broken, the cars unloaded, and the cotton checked, when it was discovered that the cotton was one bale short. The car in which the bale of cotton was checked short was in good condition when received at Savannah, and showed no signs of having been entered and broken into during transit; the seals were in good condition and showed no signs of having been broken and altered; and there was no way to have entered the car and removed anything therefrom unless the original seals had been broken or changed. The value of the bale of cotton which was checked short and not delivered was $67.71. Attached to

the agreed statement was certain correspondence between the consignees, their attorneys, and the railroad officials, relative to the loss of the bale of cotton, and a request to give the information stated in the Civil Code, §2317. The court rendered a judgment for the plaintiffs, and the defendant excepts.

*Shelby Myrick* and *Garrard & Meldrim,* for plaintiff in error.
*Alexander & Edwards* and *Alexander A. Lawrence,* contra.

EVANS, P. J.    (After stating the facts.)

1.    The petition contained two counts. The first was predicated upon the Civil Code, §2298, seeking a recovery against the defendant as the last connecting carrier receiving the goods as in good order. From the agreed statement of facts it appears that the defendant, as a connecting carrier, received two cars containing cotton from the initial carrier, and gave its receipt for the freight as in apparent good order. At the time the cars were turned over to the defendant they were in good condition, the seals were unbroken, and there was no indication that they had been tampered with; and there was no way to enter the car without injuring the seals. When the defendant broke the seals for the purpose of delivering the cotton, it was ascertained that one bale was missing. These facts overcome the presumption raised by section 2299 against the carrier who executed his receipt for the goods as having been received in good order, and can lead to no other conclusion but that there had been an error in counting the bales of cotton when loading the cars, and that in point of fact the bale of cotton, the value of which was sought to be recovered, was not in the car at the time the car was delivered to the defendant by the initial carrier.

2-5.    The other count was based upon the Civil Code, §§2317, 2318. These sections are as follows: §2317. "When any freight that has been shipped, to be conveyed by two or more common carriers to its destination, where, under the contract of shipment or by law, the responsibility of each or either shall cease upon delivery to the next "in good order," has been lost, damaged, or destroyed, it shall be the duty of the initial or any connecting carrier, upon application by the shipper, consignee, or their assigns, within thirty days after application, to trace said freight and inform said applicant, in writing, when, where, how and by which carrier said freight was lost, damaged, or destroyed, and the names

of the parties and their official position, if any, by whom the truth of facts set out in said information can be established." §2318. "If the carrier to which application is made shall fail to trace said freight and give said information, in writing, within the time prescribed, then said carrier shall be liable for the value of the freight *lost, damaged, or destroyed, in the same manner and to the same extent as if said loss, damage, or destruction occurred on its line.*" The defense is twofold: first, that under the agreed statement of facts these sections were not applicable to the case as made by the record; and second, if they were applicable, the facts show a compliance on the part of the defendant with the statute. Section 2317 applies only to a case where freight has been shipped to be conveyed by two or more common carriers to its destination, where, under the contract of shipment or by law, the responsibility of each carrier is to cease upon delivery to the next carrier "in good order." As was said in *Central of Ga. Ry. Co.* v. *Murphey,* 116 *Ga.* 863 (43 S. E. 265, 60 L. R. A. 817), "The statute is nothing more or less than a legislative declaration that where a railroad company in its own interest, to secure business, makes a contract to transport goods beyond its own terminus and limits its liability to loss or damage upon its own line, in the interest of those who deal with the company, who come in contact with it as a public carrier, in the interest of shippers, that is, in the interest of the public, the railroad company making such a contract shall, when the goods are lost or damaged in transit, be required to furnish to the shipper such information as that he may make a legal demand upon those who are responsible for the loss or damage." It therefore becomes necessary to determine whether the cotton was shipped on a through contract of carriage.

The liability of a carrier who receives goods marked to a destination beyond its own line is that if the goods are accepted by the carrier, marked to a destination beyond the carrier's line, and there is no other contract than such as is to be implied from the acceptance of the goods for carriage, the initial carrier is liable for the loss of the goods or injury to them in the hands of the connecting carrier. *Mosher* v. *Sou. Ex. Co.,* 38 *Ga.* 37; *Sou. Ex. Co.* v. *Shea,* 38 *Ga.* 519; *Cohen* v. *Sou. Ex. Co.,* 45 *Ga.* 148; *Sou. Ex. Co.* v. *Palmer,* 48 *Ga.* 92; *Falvey* v. *Ga. R.,* 76 *Ga.* 597 (2 Am. St. R. 58); *E. T., V. & G. Ry. Co.* v. *Johnson,* 85 *Ga.* 497

(11 S. E. 809). This is the rule which was adopted in Muschamp *v.* L. & P. J. R. Co., 8 M. & W. 421, where it was held that when a common carrier receives goods to be transported beyond the terminus of its own line, it undertakes to transport them to the point of destination, either by itself or competent agents, and if the goods are lost beyond the terminus of its own line, it will be liable therefor. We are aware that the current of American authority repudiates this rule, and holds that the liability of the first carrier, in the absence of any contract to the contrary, terminates when it transports the goods to the end of its line of carriage and delivers them to a connecting carrier to be taken to their destination. But this court is committed by several decisions to the rule announced by the English Court of Exchequer in the Muschamp case, and such is the law of this State. It may be urged that the contract of carriage, as evidenced by the bill of lading, limits the receiving carrier's contractual obligation to carry the cotton only to the terminus of its own line, and there deliver it to a connecting carrier to be transported over the balance of the route to destination. It will be noted that the initial carrier in its bill of lading acknowledged receipt of the cotton, "which said carrier agrees to carry to said destination, if on its own road, or otherwise to deliver to another carrier on the route to said destination." But this stipulation must be considered in connection with the other provisions of the bill of lading; and if that instrument discloses the real contract to be to carry the goods throughout the whole route, it will not be limited by the use of a form of expression which would seem intended to impose upon it only the obligation to deliver to a connecting carrier at the termination of its own route. In the bill of lading the initial carrier stipulated for an integral sum—a special price—for the service of transportation to the ultimate destination of the cotton, which was beyond its own route, and known to be so when it issued its bill of lading. It also stipulated in Article 10 that it signed the bill of lading for the different carriers who may engage in the transportation, each of which was to be bound by and have the benefits of the provisions thereof. These stipulations inserted in the bill of lading evince an intention by the initial carrier that the whole service of transportation was to be governed by the terms of its contract. The receiving carrier purports to act in behalf of every carrier who is expected to en-

gage in the transportation of the cotton to Savannah. It is true that the connecting carrier would not be bound by the receiving carrier's stipulation unless it assented to or ratified the contract *Goodin* v. *Sou. Ry. Co., 125 Ga.* 630 (54 S. E. 720, 6 L. R. A. (N. S.) 1054) ; *Ga. R. Co.* v. *Murrah,* 85 *Ga.* 347 (11 S. E. 779). But in the agreed statement of facts it is admitted that the defendant, as the connecting carrier, accepted the cars at the terminus of the initial carrier's route, and transported the cars under the contract of shipment or bill of lading issued to the shipper by the first carrier. The authority, therefore, of the initial carrier to contract for a through shipment must be conceded as established. In the light of the contract and the admission of fact, no other conclusion can be drawn from the transaction between the shipper and the first carrier than that he obligated himself to carry the cotton through to destination for an integral sum, and attempted to impose upon the shipper certain conditions, one of which is contained in Article 3, that no carrier engaged in the service of transportation shall be liable for loss or damage not occurring on its own portion of the route. See *Seaboard Air-Line Ry.* v. *Friedman,* 128 *Ga.* 316 (57 S. E. 778). A carrier which undertakes to transport goods beyond its own route may limit its liability to its own line by contract; but it can not limit its liability by a stipulation in the bill of lading unless assented to by the shipper. *Central R. Co.* v. *Hasselkus,* 91 *Ga.* 382 (17 S. E. 838, 44 Am. St. R. 37). In the *Cohen* case, supra, the receiving carrier gave its receipt as follows: "Received of H. B. C. & Co. one case . . value . . Marked Cohen & Menko, Atlanta, Ga. which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation," followed by a stipulation that it was not responsible for the negligence or non-performance of its connections; and the court held that this was a through contract of shipment, and, as the shipper did not assent to the stipulation of exemption of liability beyond the initial carrier's line, the receiving carrier was responsible for the loss of the goods occurring beyond its own line, while in the possession of the connecting carrier. There being, therefore, no contract between the plaintiff and the initial carrier, limiting its responsibility upon the delivery of the goods "in good order" to the connecting carrier, and no such limitation aris-

ing by operation of law, the Civil Code, § 2317, is not applicable so as to require a connecting carrier to respond to the application of the shipper or his assignees to trace the freight, and inform the applicant, in writing, when, where, how, and by which carrier the freight was lost, damaged, or destroyed, and the names of the parties, their official position, if any, by whom the truth of the facts set out in the information can be established. Being under no duty to furnish this information, the defendant is not liable for the penalty prescribed in section 2318.

*Judgment reversed. All the Justices concur.*