PAYNE, agent, *v.* DOMESTIC ELECTRIC COMPANY.

1. The provisions of the Civil Code (1910), § 2771, known as the " tracing act," are rendered inoperative, so far as the initial common carrier is concerned, by the provisions of § 2777 of the same code, notwithstanding it is therein provided that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

2. Under section 10 of the Federal control act of 1918, and General Order No. 50 of the Director-General of Railroads, which order has the force and effect of law, the director-general, representing the United States government, can not be held to respond in punitive damages to a shipper for any loss or injury to his freight by a common carrier which undertakes to transport the same, and in so doing causes damage to the property.

No. 2781. SEPTEMBER 16, 1922.

Question certified by Court of Appeals (Case No. 12302).

*W. O. Wilson,* for plaintiff in error.

*W. S. Dillon* and *W. J. Davis Jr.,* contra.

FISH, C. J. The Court of Appeals desires instructions from the Supreme Court upon the following question involved in this case, to wit: " Is the initial common carrier, who has received freight for a through shipment over its own and connecting lines, and who, under the provisions of section 2777 of the Civil Code (1910), is responsible to the shipper for any loss or injury to the

freight by any such carrier who may handle it, and who by the terms of that section is prohibited from relieving itself of such liability by contract or otherwise, subject to the penalty for a failure to trace such a shipment, where by the terms of section 2771 of the Civil Code, imposing such penalty, it is made applicable to cases where, under the contract of shipment or by law, the responsibility of each or either shall cease upon delivery to the next in good order? In other words, are the provisions of section 2771, codified from the act of 1890, rendered inoperative, *so far as the initial carrier is concerned,* by the provisions of section 2777 as codified from the act of 1906, although the latter section, in addition to the provisions stated, concludes as follows: ' Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law '? "

1.  The question propounded by the Court of Appeals must be answered in the negative. The tracing act, now embodied in the Civil Code (1910), § 2771, does not apply to a case like the present. That section is applicable only where the initial carrier is liable by law or by contract, and the initial carrier can not now make a contract to limit its liability. Civil Code (1910), § 2777; *A. C. L. R. Co.* v. *Henderson,* 131 Ga. 75 (61 S. E. 1111).

2.  The question propounded by the Court of Appeals must be answered in the negative, for another reason. The initial carrier is not subject to the penalty as set out in the question of the Court of Appeals. Since the act of 1891, known as the "tracing act," and now codified as § 2771 of the Civil Code of 1910, the initial carrier is now made liable for the entire journey. The United States government permitted itself to be sued for the conduct of its agents in matters of transportation. Section 10 of the Federal control act of 1918 (Fed. Stat. Ann., 2d ed., 1918 Supp. 762, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j). But on October 28, 1918, General Order No. 50 was promulgated by the Director General of Railroads, providing in part as follows:

" Whereas the act of Congress, called the Federal Control Act, approved March 21, 1918, provided that ' carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the

provisions of this act or any other act applicable to such Federal control, or with any order of the President; and whereas, since the Director-General assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising under Federal control, for which the said carrier corporations are not responsible, and it is right and proper that the actions, suits, and proceedings hereinafter referred to, based on causes of action arising during or out of Federal control shall be brought directly against the said Director-General of Railroads, and not against said corporations: It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court, based on contract, binding upon the Director-General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the Director-General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director-General of Railroads, and not otherwise: provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures. "

This order of the Director-General has been held to be of binding force, by the Supreme Court of the United States in the case of Mo. Pac. Ry. Co. v. Ault, 256 U. S. 554, 565 (41 Sup. Ct. 593, 65 L. ed. 1087). In that case it was held that "In an action against the Director-General of Railroads, the determination whether the liability imposed by a State statute is in the nature of compensation or penalty requires the application of Federal law and not State law; and the decision of the highest court of a State imposing a penalty is reviewable in this Court on writ of error." In delivering the opinion of the court Mr. Justice Brandeis said: "But whether in a proceeding against the Director-General it shall be deemed compensation or a penalty presents a question not of State, but of Federal law. Whatever name be applied, the element of punishment clearly predominated, and Congress has not given its consent that suits of this character be brought against the United States. The judgment against the Director-

General, so far as it provided for recovery by penalty, was erroneous." The case of Jackson-Tweed Lumber Co. *v.* So. Ry Co., 113 S. C. 236 (101 S. E. 924), was cited in the Ault case, seemingly with approval. In that case the Supreme Court of South Carolina held that there could be no recovery from the Director-General of Railroads of a State statutory penalty for failure of the railway company to pay a claim for the value of an animal lost in transit. And in Ginn *v.* U. S. R. Administration, 114 S. C. 236 (103 S. E. 548), the Supreme Court of South Carolina held that "The Director-General of Railroads, representing the government, can not be held to respond in punitive damages in a passenger's action for injuries." And see Rowell *v.* Hines, 114 S. C. 339 (103 S. E. 545).

In the case of Hines *v.* Taylor, 79 Fla. 218 (84 So. 381), the Supreme Court of Florida held that a statute of the State of Florida which authorized a recovery of double damages for the killing of live stock by a railroad is not applicable to suits against the Director-General of Railroads. In Massey *v.* Hines (S. C.), 108 S. E. 181, the Supreme Court of South Carolina in a late case held: "The Federal Director-General of Railroads, in control of a railroad, is not liable for punitive damages for the wilful tort of his agents and servants." The General Order No. 50 of the Director-General of Railroads expressly excepts from the class of suits named in the order as maintainable against such railroad administration "actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures." This order having been upheld by the Supreme Court of the United States, and by the courts of last resort of other State jurisdictions, it must be held that a suit brought against the Director-General operating the initial common carrier, for the recovery of a penalty, is not maintainable.

*All the Justices concur.*

ATKINSON, J., concurs in the judgment that the question propounded by the Court of Appeals should be answered in the negative.