fixes the tract sold; all thought it contained 175 acres. It had always been thought to contain that number. It may have turned out to be larger, as many tracts are; but the tract is sold. Is verbal testimony admissible to show that it was not that tract which was sold, but only one hundred and seventy-five acres of it? We think not. The entire contract is in writing. Two tracts are sold on different sides of Fort creek, with a right-of-way over the rest of Turner's land to the public road. To admit evidence to show that the trade was at eight dollars per acre would be to alter the writing in respect to the tracts of land, and to exclude the easement or right-of-way as paid for at all. There is no allegation of fraud or mistake about the writing, nor any prayer in equity, or in the nature of equity by pleadings at law, to reform this writing and correct the mistake, and there being no ambiguity about the writing. Such being the case, there was no error in ruling out the parol evidence.

It follows that the verdict and decree are right, and the judgment must be affirmed.

See, cited for plaintiff in error, 26 *Ga.*, 564; 50 *Id.*, 618; 54 *Id.*, 513; 55 *Id.*, 288; 46 *Id.*, 232; Code, §§2642, 2248. None of these citations collide with the views of this case above expressed.

For defendant, Code, §§2757, 3800; 43 *Ga.*, 190; 52 *Id.*, 448; 34 *Id.*, 289; 26 *Id.*, 564; 50 *Id.*, 618; Code, §2642.

Judgment affirmed.

----

The Central Railroad *vs.* The Dwight Manufacturing Company.

Where a shipper contracted with a railroad company to ship two hundred bales of cotton from Atlanta, Georgia, to Chicopee, Massachusetts, over a certain route, at a given price, and delivered the cotton to the railroad company, and afterwards a bill of lading was sent to the shipper, the liability of the railroad company was that of a common carrier to transport the cotton from the initial point

v 75-39

to its destination ; and it could not limit its liability by inserting in the bill of lading a provision that, for all loss or damage occurring in the transit, the legal remedy should be sought and held only against the particular carrier in whose custody the cotton might be at the time thereof, there being no express contract to that effect, the bill of lading being signed only by the agent of the company, and not having been agreed to by the shipper.

February 9, 1886.

Railroads. Damages. Negligence. Contracts. Before Judge HAMMOND. Fulton Superior Court. March Term, 1885.

Reported in the decision.

JACKSON & KING, for plaintiff.

B. F. ABBOTT, for defendant.

BLANDFORD, Justice.

The defendant in error brought their action against the plaintiff in error for the value of five bales of cotton lost in its transmission from Atlanta, Georgia, to Chicopee, Massachusetts, upon the following bill of lading:

"*Great Southern Freight Line via Savannah, Central Railroad Company.*

ATLANTA, GEORGIA, Dec. 17, 1880.

Received of S. M. Inman & Company two hundred bales of cotton, marked and numbered as below, to be transported by the Central Railroad, for transportation by that line to Savannah, and thence shipped (with liberty to compress in Savannah) by connecting steamship or steamships bound for ———— to be carried upon said steamships, with leave to tranship to any other steamship of the line and to touch at any port or ports, to tow and assist vessels in all situations, and to sail with or without pilots, unto the port of ———— the dangers of the sea, of governments, collisions or fire at sea or in port or on shore, accidents from machinery, boilers or steam, or any other accident or danger of the seas, rivers, and steam navigation, of whatever nature or kind soever, excepted, unto Dwight Manufacturing Company, Chicopee, Massachusetts, upon payment of 90 cents per hundred pounds of freight, as below."

Then there was added this stipulation in small print :

"In consideration that the cotton herein described is transported at reduced rates, it is mutually agreed, understood and enacted as a contract between the shipper and the Central Railroad Company, that since said cotton must pass through the custody of several carriers to the place of ultimate destination, the exceptions from liability made by such carriers respectively shall operate in the carriage by them respectively of said cotton as though herein inserted at length, and especially that for all loss or damage occurring in the transit of said cotton, the legal remedy shall be sought and held against the particular carrier only in whose custody said cotton may be at the time of the happening thereof."

This bill was signed "Chas. B. Wallace, general agent."

The evidence showed that Inman & Co. had contracted with the Central Railroad to ship two hundred bales of cotton from Atlanta to the Dwight Manufacturing Company at Chicopee, Mass., over the Great Southern Freight Line, via Savannah, at ninety cents per one hundred pounds, and had delivered the cotton to the Central Railroad. Afterwards the bill of lading was sent to Inman & Co. It is not shown that Inman & Co. ever agreed to any stipulations therein contained. The Central Railroad, under these circumstances, was a common carrier, and as such was bound for any loss occurring to the cotton, as common carriers are bound at common law, and the shipper was unaffected by any stipulation contained in the bill of lading. The court below held that the stipulation in the bill of lading, that "for all loss or damage occurring in the transit of the cotton, the legal remedy shall be sought and held against that particular carrier only in whose custody the said cotton may be at the time of the happening thereof," was a condition or stipulation repugnant to the contract, and for that reason void. Whether the court was right or not is immaterial, under the view we take of this case. The Central Railroad was liable as a common carrier to transport the cotton from Atlanta, Georgia, to Chicopee, Massachusetts, and it could not limit its liability in this respect by a mere stipulation to that effect inserted

in the bill of lading.   Code, §2066.   A common carrier cannot limit his legal liability by any notice given, either by publication or by entry or receipts given or tickets sold.   He may make an express contract, and then will be governed thereby.   Code, §2068.   The stipulation in the bill of lading referred to is not an express contract; it was never agreed to by Inman & Company; it was merely an attempt on the part of the carrier to limit its liability by the insertion of the stipulation in the receipt or bill of lading, which is forbidden by the statute.   36 *Ga.*, 532; 68 *Id.*, 350; 66 *Id.*, 488; 70 *Id.*, 533.

Upon the whole, we think the conclusion reached by the court was right, and his judgment is affirmed.