FALVEY *vs.* THE GEORGIA RAILROAD.

1. Railroad companies are common carriers and liable as such.
2. When a common carrier receives goods to be transported beyond the terminus of its own line, it undertakes to transport them to the point of destination, either by itself or by competent agents, and if the goods are lost beyond the terminus of its line, it will be liable therefor.
3. Section 2084 of the Code, which provides that where there are several railroads of different companies, and the goods are intended to be transported over more than one railroad, each company shall be responsible only to its own *terminus*, and until delivery to the connecting road, and that the last company which receives the goods as in good order shall be responsible to the consignee for any damage, and such companies shall settle among themselves the question of ultimate liability, does not change the rule of liability of railroad companies as common carriers, as it existed at the time of the adoption of that section of the Code. It only declares the rule of liability to be the same as that theretofore existing, where there was no contract, express or implied, general or special, by the first carrier, to transport the goods to their final destination, and it gives a cumulative remedy to the consignee.
4. When the goods are received by a carrier, to be transported beyond the *terminus* of its line and delivered at a particular place, and to a particular person at such place of destination, without more, a contract is implied that the carrier will cause such goods to be carried to the place of destination without damage or hurt,

and for failure to perform its contract, it will be liable for any damage that may arise.

(*a.*) Facts which bear on the determination of the question whether there is an express or implied contract on the part of the first carrier to transport goods beyond its own line, discussed.

(*b.*) The majority opinion in 42 *Ga.*, 642, overruled and the dissenting opinion adopted.

March 23, 1886.

Railroads.  Common Carriers.  Contracts.  Before Judge MARSHALL J. CLARKE.  Fulton Superior Court.  September Term, 1885.

To the report contained in the decision, it is necessary to add only the following: The defendant pleaded the general issue; that the damage occurred before shipment, if at all; and that its liability ceased upon delivery of the goods in good order to the next connecting road.  On the trial, the defendant introduced testimony to show that it delivered the goods to the road next connecting with it in good order and condition, and no objection was made to them.  An agent of the last of the line of roads testified that when the brooms, the subject-matter of the suit, reached their destination, they were badly moulded, and that, in his opinion, they were badly damaged before loading.

BROYLES & JOHNSTON, for plaintiff in error.

HOOPER ALEXANDER, for defendant.

BLANDFORD, Justice.

Falvey sued the railroad company for damage done to a certain lot of goods shipped by him from Atlanta, Georgia, to certain parties in Wilmington, North Carolina, upon a contract with defendant, and showed by the bill of affreightment that the goods were received by defendant in good order, and were consigned to certain persons in Wilmington, N. C.  He showed also that the goods were

received as through freight; that the whole freight was made up and charged by the Georgia Railroad; and that it designated the connecting lines of railroad over which the goods were to be transported, and the proportion which each road was to receive of the whole amount charged by the Georgia Railroad; and that there were other routes connecting with defendant's road, over which the goods could have been carried. The goods were to be delivered at Wilmington to the consignees by the plaintiff.

These goods became damaged, and the consignees refused to receive them, whereby the plaintiff was damaged.

These are the main facts relied on by the plaintiff for a recovery in this case. The same being referred to the presiding judge in the court below without the intervention of a jury, for his determination, he adjudged in favor of the defendant. To this ruling, decision and judgment the plaintiff excepted, and error thereon is assigned to this court.

1, 2. The statute of this state declares that railroad companies are common carriers, and liable as such. Acts of 1855, p. 155; Code, §2083.

What is the rule of such liability, can be determined by an examination of the decisions of this court. In 45 *Ga.*, 148; 38 *Id.*, 37, 519; 37 *Id.*, 103; 36 *Id.*, 635, it will be seen that this court adopted the English rule laid down in Muschamp's case, 8 Meeson & Welsby, 421, which is, " When a common carrier receives goods to be transported beyond the terminus of his own line, he undertakes to transport them to the point of destination, either by himself or competent agents, and if the goods are lost beyond the terminus of his own line, he will be liable therefor."

We think the rule of liability thus stated is reasonable; that any other rule would lead to great inconvenience and detriment to the public; and, as was said by Lord Abinger, Chief Baron in the case cited from Meeson & Welsby, " It is better that those who undertake the carriage of parcels, for their mutual benefit, should arrange matters of this

kind *inter se*, and should be taken each to have made the others their agents to carry forward."

This is the rule of liability as to common carriers, whether such carriers be railroad companies or others, unless modified or changed by the statutes of this state.

3. It is insisted by the counsel for the defendant in error that §2084 of the Code, which provides that, " when there are several connecting railroads under different companies, and the goods are intended to be transported over more than one railroad, each company shall be responsible only to its own terminus and until delivery to the connecting road; the last company which received the goods ' as in good order ' shall be responsible to the consignee for any damage, . . . . such companies shall settle among themselves the question of ultimate liability," changes the rule of liability of railroad companies as common carriers as the same existed in this state at the time of the adoption of this section of the Code. We do not think so, but the statute merely declares the rule of liability to be the same as that theretofore existing where there was no contract, express or implied, general or special, by the first carrier to carry and transport the goods to their final destination; and the only change which this statute makes is to give the consignee a remedy against the last road receiving the goods " as in good order," which he might not have had before the adoption of this section of the Code. This is a comulative remedy existing and established in addition to those remedies which he had already.

4. When goods are received by a carrier to be transported beyond the terminus of its line, and delivered at a particular place and to particular persons at such place or destination, without more, a contract is implied that the carrier will cause such goods thus delivered to it to be carried to the place of destination safely, without damage or hurt, and it will be liable to the consignor for failure to perform its contract, for any damages which may arise therefrom to the party injured. In order to ascertain if

any contract was made by the first carrier with the shipper to transport beyond its line to the place of destination, the bill of affreightment may be looked to; *aliunde* evidence may also be introduced, such as the payment of all the freight charges to the first carrier, the way-bill, and designation of the lines of road over which the goods are to go, and the apportionment by the first carrier of the amount which each line is to be paid for such carriage; and from these facts the jury may determine whether any contract was made, express or implied, whereby the first carrier engaged to carry the goods to the point of destination. And such was the decision of this court made by a full bench composed of Lumpkin, C. J., Lyon and Jenkins, J J., in the case of *Rome Railroad Company vs. Sullivan, Cabot & Co.*, 32 *Ga.*, 403, the opinion being delivered by Jenkins, J., and concurred in by the other judges. This decision is on the points made by the record, and has never been reversed or set aside by any decision made by a full bench.

In the case of *Baugh vs. McDaniel & Strong*, 42 *Ga.*, 642, the majority of the court, McKay, J., and Lochrane, C. J., held "that a contract will not be implied, but must appear to have been distinctly made," Warner, J., dissented, and held that such contract might be implied, and from the facts of that case, such contract did exist on the part of the carrier to carry the goods to their destination beyond the terminus of the road. But the majority held that if a special contract had been made by the first carrier to deliver the goods beyond the terminus of its road, it would have been bound. In the case now before us, this court, as now composed, hold and decide, if a railroad company contracts generally or specially, expressly or impliedly, to transport goods beyond the terminus of its own road, it is bound thereby, and would be liable to the party injured for such damages as he might sustain by reason of its failure to perform such contract.

We think the court below was probably misled by the decision referred to of the majority of the court, and that he ruled this case upon the authority of the case referred to. But it must follow from what has been said that the judgment of the court below must be reversed. The case is remanded for another trial.

Judgment reversed.