The Atlanta & West Point Railroad Company *vs.* The Texas Grate Company.

remain.   We affirm the judgment of the court below both upon the. original bill of exceptions and the cross-bill.

---

THE ATLANTA & WEST POINT RAILROAD COMPANY *vs.* THE TEXAS GRATE COMPANY.

1. A declaration by a corporation against a common carrier, alleging an alternative contract to deliver to the plaintiff or H. M. Beaty & Co. for the plaintiff, is not supported by proof of a contract to deliver to and for H. M. Beaty & Co.   Nor does such proof support the more loose allegation of a contract to deliver generally for the plaintiff, without specifying to whom.

2. That H. M. Beaty & Co., the consignees, were agents of the corporation, though their agency was not disclosed to the consignors or the carrier, would entitle the corporation to take the benefit of the contract and sue upon it in the corporate name, but would not dispense with correctly pleading the undertaking to deliver which was actually entered into, or with proving the same as pleaded. The terms of the contract would not be changed by the element of agency; that element would only vary the legal consequences in respect to parties.

3. Where the testimony (all of it introduced by the plaintiff) can be made consistent by construing the word "we" as meaning H. M. Beaty & Co., but cannot be so harmonized if construed to mean a a corporation of which H. M. Beaty is president, the former construction is the one to be adopted.

4. To recover of a common carrier damages for mere delay in performing the contract of carriage, the value of such goods at the the place of destination when they ought to have arrived should appear, and also their value when they did arrive; the difference between these values being generally the measure of damages. And to show when they ought to have arrived, the contract being silent, it should appear what length of time was usually required or was reasonably necessary to effect the transit.

5. Under an allegation in the declaration that some of the grates in question were delivered at destination in a broken and damaged condition, evidence that "the grates" were delivered in that condition will not justify an inference either that all or any particular number of them were broken and damaged.   To base any recovery on this part of the declaration, it ought to appear, approximately at least, how many were so injured, and how much the injury impaired or diminished their value.

6. A railroad company whose line extends from Atlanta to West

Point, Georgia, having received at Atlanta goods for shipment, consigned to Dallas, Texas, and having fixed by contract with the consignor the rate of freight for the whole distance, apportioning a part of the same amongst three carriers, itself included, to New Orleans, and assessing the balance for the transportation beyond New Orleans, the contract was, *prima facie,* a "through contract," and bound the initial company for performance to Dallas, the point of destination. This was so, notwithstanding the named rate was made subject to change without notice, the effect being to limit the agreed special rate to the particular shipments with reference to which the rate was established, but not to allow any change, either along or at the terminus of the route, which would effect these shipments.

October 22, 1888.

Railroads. Common carriers. Actions. Pleadings. Evidence. Contracts. Principal and agent. Parties. Damages. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1887.

In September, 1884, the Texas Grate Company, a corporation, sued the Atlanta & West Point Railroad Company, in an action of damages for failure to deliver thirty grates shipped from Atlanta, Georgia, to Dallas, Texas, by Withers & Holland, on March 17th, 1884, and to be delivered to plaintiff or to H. M. Beaty & Co. for plaintiff. The declaration was amended in October 1886, bringing in 20 more grates, shipped March 11th, 1884. The items of damage alleged were, failure to deliver at the proper time forty-nine Burnham grates of the value of $25.00 each; failure to deliver one at all; delivery of some of the forty-nine in a broken and damaged condition; failure to deliver a box of bolts belonging to the grates, and of the value of $15.00; $65.00 of excessive freight charges; freight paid second time on thirty grate-backs, $6.60; freight on grates not received, $17.76; losses in expenses of establishing agencies for the sale of the grates; amount paid Burnham for State right; and interest on investment.

The testimony is sufficiently stated in the decision. It was all introduced by the plaintiff, and none was offered by the defendant. Under it, and under the charge of the court, the jury (on September 21, 1887,) found for the plaintiff $553.18, principal and interest. The defendant moved for a new trial, on the grounds that the verdict was contrary to law, evidence and the charge of the court; also because of error in not instructing the jury that the railroad receipts introduced did not entitle the plaintiff to maintain this action, and constituted only an undertaking to carry to the end of the defendant's line; and because of error in admitting these receipts in evidence, over objection that they showed no right in plaintiff to recover and did not sustain the averments of the petition. These receipts were as follows :

(1) Receipt by defendant, dated March 11th, 1884, to Withers & Holland, for 20 grates, 6 pieces to each grate; freight charges, $34.00; consignee, H. M. Beaty & Co., Dallas, Texas.

(2) A similar receipt, dated March 17th, 1884, for 30 grates, weight 5,100 lbs., freight 91 cents.

(3) Accompanying these, is a special rate on grates, given by defendant's general freight agent, March 11th, 1884, from Atlanta to Dallas, Texas. The rate specifies the *pro rata* share of the various railroads, by which the goods were to go, including defendant's road, and is for a total of $6.40.

The new trial was refused, and the defendant excepted.

BIGBY & DORSEY, and CALHOUN, KING & SPALDING, for plaintiff in error.

G. A. HOWELL, *contra.*

BLECKLEY, Chief Justice.

1. The declaration, as framed originally, alleges a

contract to deliver, in the alternative, to the plaintiff or H. M. Beaty & Co. for the plaintiff. The amendment alleges two contracts to deliver for the plaintiff, but without specifying to whom. The evidence wholly fails to establish any contract whatsoever to deliver to the plaintiff or for the plaintiff. The bills of lading designate H. M. Beaty & Co. as consignees, and the evidence of Holland, who made with the railroad official the contract on which they were founded, shows that the undertaking was as the documents indicate, that is, to deliver not only to, but for, H. M. Beaty & Co. The plaintiff was not thought of or referred to by either party when the contract was made and when the consignees were nominated and appointed by the consignors. Whether tested by the parol agreement or the bills of lading, the carrier undertook to deliver to H. M. Beaty & Co. Such is the proof, and there is no suggestion in the evidence that any contract for alternative delivery, or for any delivery in behalf of the plaintiff, was actually made. Though the declaration was not based upon alleged bills of lading, but upon contracts not described as in writing, it was not error to admit the bills of lading in evidence, as competent testimony, in their character of receipts, to prove delivery to the carrier, and also as tending to prove a contract of which delivery by the carrier to H. M. Beaty & Co. was one of the stipulations. Had Holland's testimony shown that the preliminary contract out of which the bills of lading arose, though in parol, comprehended a stipulation to deliver to the consignees for the plaintiff, or for the plaintiff's use, the declaration might, in that element of the case, have been supported. But the bills of lading, together with Holland's evidence, demonstrate that what the declaration avers as to the terms

of the contract entered into for delivery is not true. The stipulation as to both consignments was to deliver to H. M. Beaty & Co., no more and no less.  The plaintiff, neither as consignee, nor as usee, was within its terms.

2. It is certainly a clear rule of law that, where a simple contract, oral or written is made with an agent in his own name, and the principal is undisclosed, the latter may claim its fruits and sue upon it, even though the agent also might sue.   Dicey on Parties, 138 *et seq;* Code, §§2197, 2204.

And this rule applies to contracts of bailment and for transportation.   Nav. Co. *vs.* Merchants' Bank, 6 How. 344;  Wood's Browne on Car. §604;  Ang. on Car. 494. But under our system of pleading, which requires the plaintiff to fully and distinctly set forth his cause of action, (code, §3332,) the agency should be alleged as well as proved, and the contract should be set out as made with the principal through the agent; and if the terms be to pay the agent or deliver to him, they should be recited as they were in fact.   See an instance in *Woodruff vs. McGehee,* 30 *Ga.* 158.   There is no trace in this declaration that there was any agency involved in the matter.   The agency is ignored both in the declaration and in the evidence.   The president and two of the stockholders in the plaintiff's corporation were examined as witnesses, and not one of them makes any allusion whatever to H. M. Beaty & Co. by name, or to any agency which they exercised in behalf of the corporation. It is said that as there is evidence tending to show that this property belonged to the corporation, the agency was circumstantially proved; but while circumstances are sufficient to establish almost anything, their force is very much weakened when the proof of them comes from a source which must be informed of the direct

fact, and which fails to disclose how the direct fact was. Witnesses were examined who know whether there was an agency or not, and who could testify whether there was or not, and yet they say nothing about the agency; and the effort now is to establish it by inference from circumstances to which they gave testimony. The force of these circumstances is very materially weakened by coming from witnesses who must have known the direct fact as to the agency. The mind keeps constantly repeating the inquiry, if there was an agency, why did the witnesses not say so? Why was it left to be groped after and collected from circumstances? We think no agency was proved, and certainly none was alleged. If the terms of the contract were to deliver to H. M. Beaty & Co., no matter whether H. M. Beaty & Co. were agents or not, the contract as proved was to deliver to them, and there should have been no alternative averment that it was to deliver to them or to the plaintiff. When the contract is without an alternative, it should not be alleged with an alternative; because the declaration is to give notice of the kind of contract that the plaintiff expects to rely upon.

3. As to the facts depended upon to show that there was an agency, we think this may be said: the proof is positive by Holland, the man who made the contract with the railroad company, that the grates were consigned to H. M. Beaty & Co.; that they were ordered and bought by H. M. Beaty & Co; and Holland was the plaintiff's witness. No witness testifies that H. M. Beaty & Co. acted as agents. The proof relied upon to show that they were ordered and bought, not by H. M. Beaty & Co. but by this corporation, is the testimony of H. M. Beaty, and of two others, who say that they were stockholders in the plaintiff's corporation. Holland testified that his firm, Withers & Hol-

land, consignors, sold the grates to H. M. Beaty & Co.; that they had no contract with the Texas Grate Company to furnish grates, and that he knew of no connection of that company with H. M. Beaty & Co. H. M. Beaty, president of the Texas Grate Company, testified: "We bought fifty grates from Withers & Holland, and the order was in writing. They drew a draft on us, and we paid it on presentation, at Dallas, Texas. It is not true that we did not buy the grates. We did buy them. It is not true that the plaintiffs have no interest in this suit; the plaintiffs have an interest in it; it arises from the fact that we bought the State right from the patentee, and also fifty grates from Withers & Holland, and the defendant failed to deliver said grates as per their contract. It is not true that we did not give an order for them; we gave an order for them." Mister, a member of the plaintiff's company, testified: "We bought fifty grates from Withers & Holland. It is not true that we did not buy the grates; it is not true that we did not give an order for them." Cummins, another member of the company, testified: "We bought fifty grates from Withers & Holland; do not know about the order; it is not true that we did not buy the grates; it is not true that we did not give an order for them."

A means of reconciling all this testimony, including Holland's, is to consider the word "we" as referring to H. M. Beaty & Co., and not to the corporation. It is true it will bear either construction, and apart from the evidence of Holland, would perhaps necessarily have to be referred to the corporation. But Holland's evidence is brought in by the plaintiff, is presented to us as true evidence by the plaintiff, and if true, the word "we", used in connection with giving an order and the purchase of the grates, must

mean H. M. Beaty & Co., and that construction of it, we think, is the one to be adopted.

4. According to the evidence of two of the witnesses for the plaintiff, all the grates were ultimately delivered. One witness testified that one of the grates was short and was never delivered. The weight of evidence is that they were all delivered. Both shipments were made in March; the first shipment arrived in May, and the second in October. The evidence as to value is, by Beaty and Cummins, that the grates were worth, in March, 1884, at Plano, Texas, twenty dollars each; by Mister, that they sold each at Plano, Texas, in March, 1884, for twenty dollars; by Holland, that they were worth about the same price at Plano, Dallas and other points in Texas. This evidence proves value in March, but makes no sort of disclosure as to the value in May or October. Nor is there any evidence going to show whether the grates, according to the regular course of business, would or ought to have arrived during March. The evidence fails to show how long was usually required to transport from Atlanta to Dallas, Texas, or what time would be reasonably necessary. As to what became of the grates, the evidence indicates that they were all received and distributed to the agents of this company; and there is no evidence that when they were received they were worth less than they were when they ought to have arrived, or that they could not have been sold on the market for that amount or some other, or as to what the state of the market then was with reference to such property.

5. The declaration alleges that some of the grates were delivered at the destination in a broken and damaged condition. Beaty testifies that the grates were in a broken and damaged condition on delivery at Dallas; Mister, that they were in a broken and damaged condi-

tion when they arrived at destination; Cummins, that the grates were badly broken up. Such is the evidence as to their condition. The declaration alleges that some of them were broken; the evidence states in general terms that they were broken and badly broken up; but the declaration does not pretend that they were all broken; and the witnesses do not discover to us how many of them were broken, or how much the breakage diminished their value.

6. The point is made that this contract was not a through contract, but that the liability of the receiving company, the plaintiff in error here, was limited to, or at least not extended beyond, its own line. On that question, as the case has to be tried again, we rule:

A railroad company whose line extends from Atlanta to West Point, Georgia, having received at Atlanta goods for shipment, consigned to Dallas, Texas, and having fixed by contract with the consignor the rate of freight for the whole distance, apportioning a part of the same amongst three carriers, itself included, to New Orleans, and assessing the balance for the transportation beyond New Orleans, the contract was, *prima facie*, a "through contract," and bound the initial company for performance to Dallas, the point of destination. This was so, notwithstanding the named rate was made subject to change without notice, the effect being to limit the agreed special rate to the particular shipments with reference to which the rate was established, but not to allow any change, either along or at the terminus of the route, which would affect those shipments. *Falvey vs. Georgia Railroad*, 76 *Ga.* 597, and cases cited.

The evidence, however, did not warrant the verdict. The case made by the declaration was not proved, and the court erred in not granting a new trial.

Judgment reversed.