THE CENTRAL RAILROAD CO. *v.* HASSELKUS & STEWART.

1. According to *Central R. Co.* v. *Dwight Mfg. Co.*, 75 *Ga.* 609, and *Falvey* v. *R. Co.*, 76 *Ga.* 597, the valid contracts embraced in the bills of lading involved in the present case were through contracts for shipment from Griffin, Georgia, to New York and Philadelphia, and the company with whom they were made was responsible for performance both to and beyond the terminus of its own road. The first of these authorities cuts off the company from availing itself of any limitations or restrictions of its general liability expressed in the bills of lading, the shipper not having expressly assented thereto, and there being no evidence to prove his assent save the mere acceptance by him of the bills of lading.

2. A stipulation in a bill of lading which exempts the carrier from liability unless notice is given of the damage within a specified time, is one of the matters forbidden by section 2068 of the code, and is not effectual without proof of assent thereto by the shipper.

3. When goods, though perishable or liable to rapidly deteriorate from internal causes, are damaged while in the hands of the carrier, the burden of proof is upon him to show either that he was free from negligence, or that notwithstanding his negligence the damage occurred without his fault; that is, that his negligence did not contribute to the damage.

4. The bills of lading being silent as to the time within which delivery was to be made at New York and Philadelphia, the law presumes it was to be done in a reasonable time, and parol evidence is not admissible to negative this presumption by showing that a definite and specific time was agreed upon either expressly or by implication.

5. The declaration alleging an undertaking to deliver in a specific time, but none to deliver in a reasonable time, evidence of what would be a reasonable time was inadmissible, and no recovery could be had under the declaration as it stands for failure to deliver in a reasonable time. If the necessary allegation is supplied by amendment, all the relevant facts and circumstances touching the particular shipment, as well as touching that class of shipments generally, may be shown to ascertain what length of time would be reasonable.

April 24, 1893. Argued at the last term.

Before Judge BOYNTON. Spalding superior court. February adjourned term, 1892.

HALL & HAMMOND, for plaintiff in error.

STEWART & DANIEL, *contra.*

SIMMONS, Justice.

1. The action was for damages to fruit from delay in transportation. The plaintiffs recovered, and the defendant moved for a new trial, which was refused, and it excepted. The shipments were made from Griffin, Ga., on the defendant's line of railroad, under bills of lading issued by the defendant, which were headed: "Central Railroad and Banking Company, and connections. Through Bill of Lading," and which stated that the fruit was received in apparent good order and condition, consigned to certain named parties in New York and Philadelphia, to be transported by the defendant and connecting carriers, *via* Atlanta, to the station or wharf nearest to its ultimate destination. The defendant at the same time took from the shippers a guaranty of the freight charges for the entire route. It was contended that the defendant was not liable, because there was no delay or damage on its own line, which ended at Atlanta, and because as to any delay or damage beyond its line it was released by the contracts of shipment, the bills of lading stipulating that "the liability of each carrier as to goods destined beyond its own route shall be terminated by proper delivery of them to the next succeeding carrier," and "in case of loss, detriment or damage, or delay in the transportation thereof, imposing any liability hereunder, the carrier in whose actual custody they were at the time of such loss, damage, detriment or delay, shall alone be responsible therefor." The bills of lading were signed only by the agent of the defendant, and it does not appear that these stipulations were expressly assented to on the part of the shippers.

The code (§2068) declares that "a common carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and

will then be governed thereby." According to the decisions of this court in *Central R. Co.* v. *Dwight Mfg. Co.,* 75 *Ga.* 609, and *Falvey* v. *R. Co.,* 76 *Ga.* 597, when a common carrier gives the shipper a bill of lading which states that the goods received are to be transported by itself and connecting carriers to a certain point beyond the terminus of its line and there delivered to a particular person, and the shipper at the same time pays such carrier, or agrees with it to pay, the freight charges for the whole route, this constitutes a contract for through shipment, for the performance of which, beyond as well as to the terminus of its own line, the contracting carrier is responsible. And under the first of these authorities, additional stipulations in the bill of lading by which the carrier seeks to confine its liability to its own line, and which are not expressly assented to by the shipper, do not change the nature of the contract and are inoperative as limitations of the carrier's liability. Mere acceptance of the bill of lading does not establish the shipper's assent to stipulations of this kind. See further, as to the character of the contract: *Savannah etc. R. Co.* v. *Pritchard,* 77 *Ga.* 412, and *Atlanta & W. Pt. R. Co.* v. *Texas Grate Co.,* 81 *Ga.* 610. A different contract is not shown by evidence that the carrier was not interested in the rate contracted for as to the part of the route beyond its own terminus, but received only its regular " local " rate from the connecting carrier. It follows that the court below did not err in declining to give in charge to the jury the requests set out in the 3d, 4th and 5th grounds of the motion for a new trial.

2. Another stipulation under which the defendant claimed exemption from liability was the following: " All claims for damage to goods must be made, and the nature and extent thereof fully disclosed, in the presence of the agent of the carrier having the same in their custody, before they are removed from the station

or wharf.    Unless written demand for damage shall be made upon the carrier liable therefor, or upon the carrier which actually delivered the goods, within ten days after delivery, all claims for damage shall be taken to have been waived, and no suit shall thereafter be maintained to recover the same." It was contended that the court erred in charging the jury that this was not binding upon the plaintiffs unless they " signed it, or understood and agreed to it in such manner as would indicate that it was clearly made a part of the contract." What we have said as to other stipulations in the bills of lading applies also to this. Under the decision of this court in *Southern Express Co.* v. *Barnes*, 36 *Ga.* 532, it is an attempt to limit the legal liability of the carrier, and is not effectual without proof of assent thereto by the shipper.

3. When goods are damaged in the hands of the carrier, the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage; and no exception to the rule arises from the fact that the goods are perishable or liable to deteriorate rapidly from internal causes. In all cases the presumption of law is against the carrier. (Code, §§2066, 2064.) The word " loss," as used in those sections, includes injury or damage to the goods. *R. & D. R. R.* v. *White*, 88 *Ga.* 813.

4. The office of a bill of lading is to embody the contract of carriage, as well as to evidence the receipt of the goods; and when the shipper accepts it without objection before the goods have been shipped, and permits the carrier to act upon it by proceeding with the shipment, it is to be presumed that he has accepted it as containing the contract, and that he has assented to its terms, except, as we have seen, in so far as it undertakes

v 91-25

to limit the general liability of the carrier. Incident to every such contract are certain matters which, when not expressed in the instrument, enter into and form a part of it by implication of law, and one of these is the time of performance. If no time is expressed, the instrument is not on that account to be regarded as incomplete, so as to admit proof of a distinct and separate agreement as to time. In such case the parties are presumed to have intended that the carrier's obligation as to the time of performance shall not extend beyond that imposed upon it by law in all undertakings for the transportation and delivery of goods, and which requires no more than that " the same be done without unreasonable delay." (Code, §2073.) This implied agreement is as much a part of a bill of lading silent as to the time of performance, as if expressed in it in so many words; and the rule which forbids the introduction of parol proof to vary the terms of a written instrument excludes evidence of a prior or contemporaneous parol agreement that the goods shall be delivered within a definite and specific time. " There is no rule of law better settled or more salutary in its application to contracts than that which precludes the admission of parol evidence to contradict or substantially vary the *legal import* of a written agreement." See Martin *v.* Cole, 104 U. S. 36, 38; Naumberg *v.* Young, 44 N. J. L. 331; Jones, Construction of Commercial and Trade Contracts, 308–9, 193–5, 245 *et seq.* In Hutchinson on Carriers, §§126, 127a (ed. 1891), it is said: " Except in the recital or acknowledgment of the receipt of goods and of their quantity and condition when received, bills of lading are strictly written contracts between the parties and come within the general rule which precludes the introduction of parol evidence to contradict or vary such contracts. . . And not only is such evidence inadmissible to change or vary in any particular the express

terms of the contract, but in these instruments, as in all other written contracts, there may be implied obligations as to which the contract may be entirely silent, but which result by necessary implication or construction from the very nature of the contract itself; and such implied obligations can no more be varied by verbal evidence than the express written stipulations of the parties." See also : Louisville etc. R. Co. *v.* Wilson (Ind.), 40 Am & Eng. R. Cas. 85, 87; 4 Lawy. Rep. Annot. 244; and Pa. etc. R. Co. *v.* Clark (Ind.), 27 N. E. Rep. 586. In the case last cited it was held that parol proof was inadmissible to show an undertaking to ship on a certain train, the bill of lading being silent as to the time of shipment and the effect of such evidence being to vary the implied agreement to ship within a reasonable time. "An agreement to do a thing within a definite time can never be identical in spirit or substance with an agreement to do it within a time not fixed, and which in law is to be merely a reasonable time. And where the written contract is left in that indefinite shape, an agreement to make it definite is an agreement to alter it; and this cannot be done by any contemporaneous parol understanding." Stange *v.* Wilson, 17 Mich. 346; Liljengren Co. *v.* Mead (Minn.), 44 N. W. 306; Stone *v.* Harmon, 31 Minn. 512; Driver *v.* Ford, 90 Ill. 595. The responsibility imposed upon the carrier by the implied contract or duty to transport and deliver within a reasonable time, is merely that of an ordinary bailee for hire, and renders the carrier liable only for such damages from delay as the bailor may have suffered by its negligence; but if the contract is that this service shall be performed within a certain specified time, the carrier will be held to strict performance, and no degree of diligence will excuse the failure to perform within that time. In the present case the bills of lading were silent as to the time of transportation and

delivery, but the plaintiffs, over objection, were permitted to introduce evidence to show a prior and contemporaneous parol agreement that the goods were to be shipped by a certain "fast freight schedule," which was also admitted in evidence over the defendant's objection, and which stated that fruit trains shipped under it would leave Atlanta at a certain hour, " arriving in New York before twelve o'clock the second night in good·time for early market of the third morning." Under the pleadings the court erred in admitting this testimony: The plaintiffs having proved a written contract of carriage, a part of which was an implied stipulation that the carrier should be allowed a reasonable time for performance, they could not be permitted in this manner to . substitute a warranty to deliver within a definite and specific· time. If the understanding of the shippers was that the goods were to be delivered within a certain time, and it was intended that this should form a part of the contract, they should have seen to it that this understanding was embraced in the written instrument which the carrier tendered them as containing the contract of carriage. But they accepted it as it stood, without objection, and permitted the goods to be shipped under it; and it is not pretended that the understanding as to delivery in a specified time was omitted by fraud or mistake. A bill of lading thus accepted and acted upon, though signed only by the carrier, has the same effect, as to being varied by parol, as if signed also by the shipper, and must be looked to as the final repository and sole evidence of the contract of carriage.    17 Am. & Eng. Enc. of Law, ·tit. Parol, 432. And see *Richmond & Danville R. Co.* v. *Shomo*, and authorities cited, 90 *Ga.* 496, 16 S. E. Rep. 220.

5. Had the plaintiffs sued upon the implied contract or duty to deliver within a reasonable time, evidence as to the schedule might have been received, together with

all other relevant facts and circumstances touching that particular shipment, as well as touching that class of shipments generally, to ascertain what length of time would be reasonable. But the contract alleged was a contract to deliver in a definite and specific time; and the plaintiffs must be held to the case stated in the declaration. Evidence as to what would be a reasonable time was therefore inadmissible, and no recovery could be had for failure to deliver in a reasonable time. See Pa. etc. R. Co. *v.* Clark, 27 N. E. Rep. 586, cited *supra,* and Snow *v.* R. Co.; 109 Ind. 422. If the necessary allegation is supplied by amendment, evidence as to what would be a reasonable time will then be admissible.

It follows that the court below erred in not granting a new trial.                         *Judgment reversed.*