CENTRAL OF GEORGIA RY. CO. v. KAVANAUGH et al.

(Circuit Court of Appeals, Fifth Circuit. January 24, 1899.)

No. 735.

CARRIERS OF GOODS—LIMITATION OF LIABILITY—STATE STATUTES.

A contract made by a railroad company in Georgia for the through carriage of freight from Savannah to Chattanooga, Tenn., is governed by the statutes of Georgia; and under Civ. Code 1895, § 2276, providing that a carrier can only limit its legal liability by express contract, as construed by the courts of the state, a provision of the bill of lading that the railroad should only be liable for the safe delivery of the goods to its connecting carrier is without effect to relieve it from liability for damage to the goods while in the possession of the connecting carrier, unless such bill of lading is signed by the shipper.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

Kavanaugh & Brennan shipped a car load of bananas from Savannah to Chattanooga. The car was delayed in transit, and the bananas deteriorated, whereupon Kavanaugh & Brennan intervened in the main suit (the Central Railroad & Banking Company of Georgia against the Farmers' Loan & Trust Company), against the receivers of the Central Railroad & Banking Company of Georgia, for damages for the delay in the shipment of bananas. The shipment was made via the Central Railroad, from Savannah to Atlanta, and thence to Chattanooga, via the Western & Atlantic Railroad. It is conceded that the shipment was delayed in transit on that portion of the route beyond Atlanta. The carriage between Savannah and Atlanta was confessedly prompt and expeditious. The line of the Central Railroad terminates at Atlanta, and the defendant showed delivery to the Western & Atlantic Railroad, its connection. The appellant, the Central of Georgia Railway Company, was duly substituted defendant in the place of the said receivers. The master found in favor of the plaintiffs. Exceptions were filed as follows: "And now, within thirty days from date of the master's report, comes the Central of Georgia Railway Company, substituted defendant in said cause in place of H. M. Comer and R. Somers Hayes, receivers of the Central Railroad & Banking Company of Georgia, and excepts to the master's finding, and specifically to the master's conclusion of law, as follows: The only defense sought to be set up in this case is that the negligence through which the loss was occasioned was that of a connecting line, to which the fruit had been delivered with proper diligence. By the terms of the bill of lading, the goods were to be transported by the Central Railroad and connecting lines, via the W. & A. R. R., until they reach the station nearest to the ultimate destination. Against this liability, relief is sought by the stipulation in the bill of lading to the effect that the liability of the Central Railroad ceases with proper delivery to its connecting and succeeding carrier. This agreement or stipulation would have been a good defense had the bill of lading been signed by the consignor; but it was not, and its insertion in the bill of lading does not limit the liability of the carrier. To limit its liability, an express contract must be made by the common carrier with the consignor. The errors in the master's conclusion of law being: First. That the master held, in effect, that the defendant had made a contract to carry the goods through to destination, and to be liable for them beyond the terminus of its own line, whereas the bill of lading under which the bananas were shipped specifically provided against this in the following paragraphs, taken from the bill of lading, which is attached to the evidence, and to which reference is hereby made: 'It is mutually agreed, in consideration of the rates herein guarantied, that the liability of each carrier as to goods destined beyond its own route shall be terminated by proper delivery of them to the next succeeding carrier.' 'This bill of lading is signed for the different carriers who may be engaged in the transportation, severally, not jointly, and each of them is to be bound by and have

the benefit of all the provisions thereof as if signed by it, the shipper, owner, and consignee. The acceptance of this bill of lading is an agreement on the part of the shipper, owner, and consignee of the goods to be bound by all of its stipulations, exceptions, and conditions, as fully as if they were all signed by such shipper, owner, and consignee. This contract is executed and accomplished, and the liabilities of the company as common carrier thereunder terminate, on the arrival of the goods or property at the wharf, station, or depot to which this bill of lading contracts to deliver, and the carrier will be responsible thereafter only as warehouseman. The bill of lading shall have the effect of a special contract, not liable to be modified by a receipt from or act of an intermediate carrier.' Second. The master treated the terms of the bill of lading as though there were an effort on the part of the defendant to limit its liability, and therefore were not good because not signed by the consignor; whereas, under the general commercial law which prevails in the United States courts, before the carrier is held liable beyond the terminus of its own route, it must appear that the carrier has made an express contract to be so liable." On the hearing, the exceptions to the master's report were overruled, and a decree was rendered in favor of the interveners, from which decree the Central of Georgia Railway Company appealed to this court.

T. M. Cunningham, Jr., for appellant.

M. A. O'Byrne, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and PAR-LANGE, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The contract of transportation in this case stipulates for a through carriage of goods. It is styled at its head "Through Bill of Lading." It contracts for the delivery of the goods at Chattanooga, their destination, and stipulates for a through rate of freight, and, in terms, attempts to limit the carrier's liability, except on its own lines, as follows:

"Each carrier shall be bound (subject to the limitations and exceptions contained in this contract) to deliver said goods in the same order and condition as that in which it received them; and the ultimate carrier to deliver them at its station or wharf, to the consignee or his assigns, if called for by him or them, as in this contract provided, he or they paying freight and charges thereon, and average, if any. It is mutually agreed, in consideration of rates herein guarantied, that the liability of each carrier as to goods destined beyond its own route, shall be terminated by proper delivery of them to the next succeeding carrier."

The bill is a through bill of lading, aside from the fact that the attempt at limiting liability is wholly inconsistent with any other view of the contract than that it is, and was intended to be, a through bill. As the contract was a Georgia contract, it is pertinent to cite, as to the character of the same, Central R. Co. v. Dwight Mfg. Co., 75 Ga. 609; Railway Co. v. Pritchard, 77 Ga. 412, 1 S. E. 261; Atlanta & W. P. R. Co. v. Texas Grate Co., 81 Ga. 610, 9 S. E. 600; and Railroad Co. v. Hasselkus, 91 Ga. 382, 17 S. E. 838.

Civ. Code Ga. 1895, § 2276, reads as follows:

"A common carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract and will then be governed thereby."

The construction of this section by the supreme court of Georgia is to the effect that a common carrier receiving goods for through

shipment over its ·own and other lines cannot confine its liability to damages on its own line, and relieve itself from negligence and damage on the lines of connecting carriers, except by an express contract assented to by the shipper, and that the mere acceptance by the shipper of a bill of lading containing a provision confining the general responsibility of the contracting carrier to liability for negligence and damages on its own line is not sufficient under the statute. Express Co. v. Purcell, 37 Ga. 103; Railroad Co. v. Spears, 66 Ga. 490; Railroad Co. v. Gann, 68 Ga. 350; Central R. Co. v. Dwight Mfg. Co., 75 Ga. 609; Railroad Co. v. Hasselkus, 91 Ga. 382, 17 S. E. 838.

If the Georgia law, as construed by the supreme court, should prevail as to the contract in this case, the finding of the master and the decree of the court affirming the same are conceded to be correct. Counsel for appellant, however, contends that the Georgia law should not prevail, and that this court should ·not be controlled by the judicial decisions of the state where the contract of carriage was made, but should follow the common-law rule, as declared by the courts of the United States. His main reliance is upon Myrick v. Railroad Co., 107 U. S. 102–107, 1 Sup. Ct. 425, 429, which decides:

"The general doctrine, then, as to transportation by connecting lines, approved by this court, and also by a majority of the state courts, amounts to this: That each road, confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route, and safely to deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence."

The supreme court have had frequent occasion to cite the Myrick Case with approval, but have found it proper to declare that it is only applicable in the absence of a controlling statute. Railway Co. v. Prentice, 147 U. S. 101, 106, 13 Sup. Ct. 261; Railroad Co. v. Baugh, 149 U. S. 368, 375, 13 Sup. Ct. 914; and Railway Co. v. Solan, 169 U. S. 133, 136, 18 Sup. Ct. 289.

In this last-mentioned case the proposition is stated as follows:

"The question of the ·right of a railroad corporation to contract for exemption from liability for its own negligence is, indeed, like other questions affecting its liability as a common carrier of goods or passengers, one of those questions, not of merely local law, but of commercial law or general jurisprudence, upon which this court, in the absence of express statute regulating the subject, will exercise its own judgment, uncontrolled by the decisions of the courts of the state in which the cause of action arises. But the law to be applied is none the less the law of the state, and may be changed by its legislature, except so far as restrained by the constitution of the state or by the constitution or laws of the United States."

From this it is clear that the common-law rule declared in the Myrick Case is not to be applied when there is an express statute of the state where the transportation contract is entered into, regulating the matter. And see Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397–447, 9 Sup. Ct. 469 et seq. Section 2276 of the Georgia Civil Code is an express statute providing how the carrier may relieve himself of liability by contract. The true construction of this statute has been settled by an unbroken line of decisions.

by the supreme court of Georgia. In general, the construction given to a state statute by the highest court of the state will be followed by the courts of the United States. It is therefore clear to this court that the master, in applying section 2276 of the Georgia Civil Code, as construed by the supreme court of Georgia, to the facts of this case, did not err, and that the decree of the court based on the master's report was correct, and should be affirmed; and it is so ordered.