A94A1653. KIRBY v. SPATE et al.
(448 SE2d 7)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Joan Kirby appeals the order of the trial court granting summary judgment to appellees/defendants Robert and Verrill M. Spate d/b/a Liahona Charter Service.

Appellant filed suit for damages sustained in September 1987, while operating a 1972 model bus. This bus was used by appellee owners to transport children on an established school route. Appellant was driving the bus to demonstrate her proficiency while testing for employment as a bus driver; Robert Spate was in the bus as her evaluator. Going up an incline appellant shifted gears, perhaps stall-

ing the bus; a loud pop was heard and the bus began to roll backward. The bus brakes failed; the bus hit a tree and appellant was injured. No problem had been noticed with the brakes earlier that day. There exists some evidence that the cause of brake failure was a defective diaphragm in the rear air chamber of the brake system which was "showing age."

Appellees purchased the bus approximately a year and a half earlier at an auction. At the time of purchase no bus repair history or maintenance log was obtained from the sellers. Thereafter, appellees kept no formal maintenance log pertaining to the bus. Mr. Spate had no knowledge of how old the parts on the bus were or how many miles the bus had been driven without changing deteriorative parts. However, after auction, the bus was taken to Truck & Trailer Repair for major overhaul. Truck & Trailer made a complete check of everything on the bus, safety and mechanical, before it was placed in service.

In March 1987, Robert Spate took the bus to Wheels & Brakes, Inc. and obtained a brake job on the bus; the front diaphragms were replaced but not the back ones. Mr. Spate told Wheels & Brakes to do whatever it took to put the bus back "in A-1 condition." The diaphragms probably were replaced because they were leaking; it is not normal procedure to tear down a brake canister unless the diaphragms appear to be leaking. The Wheels & Brakes shop foreman testified that once a canister seal is broken the diaphragm is replaced. Leaking diaphragms are replaced but unless a leak is found, the responsibility of diaphragm replacement rests upon the customer. While a physical inspection of the diaphragms is important, this is not a part of a complete brake inspection or overall brake repair job and must be requested by the customer. It is the owner or operator's responsibility to insure work is done on a vehicle "on a normal basis." Mr. Spate testified that the mechanics at Wheels & Brakes were told to "go through the whole thing and put the brakes in tiptop condition," because the bus would be hauling school children. Spate was charged $910.06 for the brake work; a fee consistent with major repair of the bus' braking system. When this service was accomplished, Spate "felt that everything was done [that] needed to be done." However, the Wheels & Brakes shop foreman testified by deposition that service of the type requested by Spate would not include a visual inspection of the brake diaphragm, as such a procedure involves more labor. Diaphragms do not show their age or wear by any visible sign, such as discoloration, cracking, or similar symptom; the age of a diaphragm cannot be determined merely by looking at it installed on a system.

In June 1987, the bus was in a minor rear-end collision with another vehicle and the bus driver reported that something might be wrong with the brakes. Truck & Trailer Repair was hired to "check

the thing over," that is, to perform "an inspection of the braking system of the bus." Mr. Beck, former owner of Truck & Trailer, testified by deposition that Truck & Trailer was only requested to check the brakes because they were fading, and had the authorization been to do whatever was necessary to repair the brakes, Beck would have repaired "everything we found wrong." No physical check was made of the brake diaphragms. If a diaphragm had an air leak, a loss of air would occur when the brake lever was depressed; so the air cylinder would not be "physically" disassembled to inspect a diaphragm for air leaks. Had Beck been requested by anyone to check out the brakes and make sure they were in working condition, he would have completely gone through the entire brake system. Most owners, contractors and independents establish their own maintenance program and, although it is hard to determine, a diaphragm is good for at least 100,000 miles. Periodic replacement of a diaphragm is necessary as it will deteriorate over a period of time and become susceptible to rupture or it can also explode. Diaphragms can fail from normal wear and tear causing the whole brake system to fail in a bus with a system like that in appellant's bus. Truck & Trailer found nothing wrong with the brakes on the bus. The diaphragm Beck was shown could have developed the type of damage it had from normal wear and tear. If a bus was found to have an oil or air leak in the brake system, or a bad compressor which pumped the cylinder full of oil, Beck would consider it necessary to inspect the diaphragms and would so recommend to the owner. He also would inspect the diaphragms if the vehicle had over 100,000 miles and the owner expressly requested such an inspection.

After Truck & Trailer Repair completed their brake system check, which included a test drive of the bus by Mr. Spate and Mr. Beck, Mr. Spate took the bus, which was an International Bus, to Heuer International Trucks, Inc. who reinspected the brake work on July 2, 1987. Mr. Spate did not ask Heuer International to do any work on the brakes, but to inspect it and advise him as to what was wrong with it. He remained on the premises while the inspection was being conducted. Heuer International, however, did not inspect the rear brake diaphragms. By affidavit, a Heuer mechanic stated that he was requested to check the brake system of the bus and advise the owner of any problems; he inspected the brake and air systems and installed a wet tank bleeder valve as requested. He detected no leaks in the system at that time and found it functioning normally. He further stated that a visual inspection of the diaphragms can only be done by disassembling the brake chambers; once a chamber is disassembled the diaphragms must be replaced. Thus, when performing an inspection of the air brake system, the diaphragms are not visually inspected; but if an air leak is detected or a chamber physically dam-

aged, "and if the customer desires the diaphragms changed, then the chambers are disassembled." Heuer's service manager testified by deposition that, in the absence of an air leak, his company would not physically inspect a brake diaphragm without the owner's request, as "you're talking about a lot of money to tear . . . diaphragms down." Under certain conditions, a visual inspection of a diaphragm could reveal deterioration. If an air leak had been detected, Spate would have been advised to replace the diaphragm. It was not Heuer's practice to replace diaphragms periodically which did not leak or exhibit any visible problems. After inspection, the bus was road tested by Heuer's mechanic.

The bus was taken to Truck & Trailer about once a month for regular servicing, which "usually" included brake inspections; Spate would take the bus in and tell Truck & Trailer to "check it over for me." Drivers checked their buses daily for items such as lights and brakes by doing a "walk-around inspection" — they would not raise the hood. Mr. Spate also performed personal weekly inspections of each bus (which included test drives) to catch any items the drivers may not have noticed; however, he is not a mechanic and the only maintenance he performed was checking the oil, water and similar items. Shortly before the incident, Mr. Spate drove the bus; its foot and parking brakes were properly functioning.

Mr. Spate is not knowledgeable about brakes and diaphragms; not being a mechanic, he had to take the mechanics' word that they did what he was paying them to do; he "trusted them to know what they were doing." Mr. Spate conceded that it was his practice to ask that brake diaphragms be inspected "only if there is some other reason to suspect [a problem with the diaphragm], such as hearing an air leak or something like that." Spate never had a discussion with any of the repair shops about a maintenance schedule for inspection of brake diaphragms, although he had arranged for a monthly inspection of the bus at Wheels & Brakes. He had no understanding whether the diaphragms would be inspected when the brakes were inspected. *Held*:

1. (a) The proper summary judgment standard where there is a movant/defendant is stated in *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474).

(b) Appellant contends that, pursuant to OCGA § 46-9-1, the standard of care required of appellees, as a common carrier, is that of extraordinary diligence. We find, thereby pretermitting the issue whether appellant is a common carrier or merely a private carrier, that OCGA § 46-9-1, with certain limited exceptions not here applicable, "applies only to the carriage of goods." *Bricks v. Metro Ambulance Svc.*, 177 Ga. App. 62, 65 (1) (338 SE2d 438); see also *Central R. Co. v. Hasselkus &c.*, 91 Ga. 382, 385 (3) (17 SE 838); *Effort Enter-*

*prises v. Crosta*, 194 Ga. App. 666 (1) (391 SE2d 477). Nor does a duty of extraordinary care arise under OCGA § 46-9-132, as appellant was not a "passenger" within the meaning of that Code section, there being, inter alia, no contract for the payment of a fare or its equivalent. OCGA § 46-1-1 (8); see generally 14 AmJur2d, Carriers, §§ 739-740, 770. The standard here is one of ordinary diligence: that degree of care which is exercised by ordinarily prudent persons under same or similar circumstances. OCGA § 51-1-2.

2. OCGA § 40-8-54 pertinently provides that "[a]ll brakes shall be maintained in good working order." *Gregory v. Ross*, 214 Ga. 306, 311 (5) (104 SE2d 452) recognizes the statutory duty imposed upon an owner to keep a motor vehicle equipped with proper brakes, and states a general rule regarding the conditions under which an owner will be liable for allowing a vehicle with defective equipment to be driven by a third party. However, under certain circumstances, it may not be sufficient to escape liability for damages arising from a brake failure that an owner repeatedly had the brake system inspected for the purpose of detecting and repairing any existing brake defects. The brake defect which existed at the time of the accident (and was its proximate cause) must have occurred "wholly" without the fault of the owner. *Johnson v. McAfee*, 151 Ga. App. 774, 775 (2) (261 SE2d 708). Thus, when an owner is operating a used bus (particularly one whose past maintenance history is unknown) for the primary purpose of transporting school children — a venture in which the State has a special safety interest (see, e.g., OCGA § 40-8-220) — a genuine issue of material fact yet may remain whether the owner has exercised ordinary diligence if he fails to establish an effective maintenance program to replace periodically all deteriorative brake parts which, if allowed to deteriorate or otherwise become defective through ordinary wear and tear, could with reasonable foreseeability result in injury to bus passengers. Whether it complies with the requirements of ordinary diligence merely to inspect a bus (being used as a school bus) for existing brake defects and to replace deteriorative brake parts only after they have become defective, rather than establishing an ongoing maintenance program to replace periodically deteriorative brake parts before they fail and foreseeably cause a brake system failure, presents questions of fact for the jury. Cf. *Lewis v. Harry White Ford*, 129 Ga. App. 318 (2) (199 SE2d 599) (other factual considerations presented by record). Whether appellees were negligent, under the existing circumstances, and whether such negligence, if any, was a sole or concurring cause in appellant's alleged injuries presents questions for the jury. See *Wade v. Mitchell*, 206 Ga. App. 265, 268 (4) (424 SE2d 810).

Whether a statutory requirement should be enacted requiring owners to replace periodically air brake diaphragms and other safety-related deteriorative parts on buses routinely used to transport school

children is a matter which should be addressed by the legislature.

*Judgment reversed. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 26, 1994 —
RECONSIDERATION DENIED AUGUST 16, 1994 —

*Cathey & Strain, Dennis T. Cathey*, for appellant.
*Smith, Gambrell & Russell, David A. Handley, Dana M. Richens*, for appellees.